[Civ. No. 5529. First Appellate District, Division Two.—June 26, 1926.]

HENRY C. LeBARON, a Minor, et al., Respondents, v. BERRYESSA CATTLE COMPANY (a Corporation), Appellant.

[1] MINORS—CONTRACT FOR PURCHASE OF REAL AND PERSONAL PROPERTY—RESCISSION—RESTORATION—VALUE OF CATTLE—PLEADING—MOTION TO STRIKE OUT.—In an action by minors for the rescission of certain instruments executed by them in connection with the purchase of real and personal property, including cattle, all of which cattle were restored to defendant almost three months after the execution of the contract of purchase, the value of the cattle

on a date ten days prior to the restoration, which value was alleged to be less- than that which the cattle had at the time of the execution of the contract, was a matter of no importance.

[2] ID.—VALUE OF CATTLE—EVIDENCE.—In such action, where a witness for defendant, in support of defendant's offer to prove the value of the cattle at the time of the execution of the contract, testified that he had not seen the cattle for three and one-half months prior to the execution of the contract, the trial court properly sustained plaintiffs' objection to the question covering such witness' opinion as to the value of the cattle per head on the day of the execution of the contract.

[3] ID.—CONTRACTS—RESCISSION—SPECIFIC PERFORMANCE—DAMAGES.—
As under section 35 of the Civil Code a minor may disaffirm and rescind a contract by restoring the consideration, the other party may not by way of counterclaim or cross-complaint have a specific performance or recover damages for the minor's failure to carry out the terms of the contract which is rescinded.

[4] ID.—RETURN OF CATTLE BRAND—CONSIDERATION—OFFER—EVIDENCE.
In such action, the defendant cannot be heard to complain that at the time of delivery of the possession of the premises the plaintiffs did not actually transfer to defendant by written conveyance their right to use a cattle brand, where the cattle brand itself was left upon the premises and defendant used it continuously from the time it again took possession until the date of trial, and plaintiffs' written notice of disaffirmance expressly offered to transfer to defendant the entire consideration which plaintiffs had received, and in their complaint and during the trial plaintiffs expressly renewed their offer covering the matter of the cattle brand.

[5] ID.—USE OF HAY AND COTTONSEED MEAL—SET-OFF—CONSIDERATION
—RESTORATION—FINDING—SERVICES—EVIDENCE — PRESUMPTIONS. —
In such action, the trial court did not err in refusing to allow defendant a set-off upon its counterclaim for the use of hay and cottonseed meal which had been fed to the cattle during the time of plaintiffs' occupancy of the premises, where plaintiffs were entitled to recoupment for expenses incurred and services rendered in caring for the ranch and property and feeding the cattle, and it is fair to assume in support of the judgment in favor of plaintiffs that the trial court took all these matters into consideration when it found that the entire consideration moving to plaintiffs had been returned to defendant.

[6] ID.—CONSIDERATION—RESTORATION—RESCISSION—EQUITY — DISCRETION.—The demands of section 35 of the Civil Code are that a minor over the age of eighteen years may disaffirm his contract

---

3.  See 14 **Cal.** Jur. 128.

upon restoring or offering to restore the consideration which he had received, but that if this cannot be done he must pay its equivalent, and in seeking to avoid a contract under these circumstances, the minor is governed in many respects by the ordinary rules relating to rescission of contracts in general, and in such a case, the action being in equity, the trial court is vested with a broad discretion to see that equity is done.

[7] Id.—Contract Involving Various Classes of Property—Restoration of Consideration—Equity.—When the contract involved includes various classes of property and a number of separate transactions it is *not necessary for the court in equity to segregate* the contract into its separate parts and to demand a restoration in kind of the separate items of property involved, but where the contract is disaffirmed upon an offer to restore the *entire consideration* upon the condition of the return to the minors of the consideration which passed from them and the other parties accept from the minors the return of that which the minors claim to be the entire consideration which they received, the trial court should be permitted to balance the equities running through the entire transaction and to determine whether the consideration *or its equivalent* has not in fact been restored.

[8] Id.—Consideration—Character of—Construction of Section 35, Civil Code.—The purpose of section 35 of the Civil Code is to place the party dealing with the minors *in statu quo* as far as this may be done either by the return of the entire consideration in kind or by the payment of its equivalent (which may be in cash, property, or benefits).

[9] Id.—Interest—Time—Judgments.—In such action, the trial court did not err in awarding plaintiffs interest on the money paid to defendant under the contract from the date of payment rather than from the date of their disaffirmance of the contract, where the money paid by plaintiffs to defendant was in effect an advancement without legal consideration on their part, and defendant enjoyed the use of this money from the date of the execution of the contract.

---

(1) 31 Cyc., p. 628, n. 20.    (2) 21 C. J., p. 180, n. 89; 22 C. J., p. 583, n. 24.    (3) 31 C. J., p. 1071, n. 71, p. 1075, n. 32, p. 1113, n. 43 New.    (4) 31 C. J., p. 1022, n. 89 New.    (5) 4 C. J., p. 775, n. 47, p. 776, n. 50; 31 C. J., p. 1113, n. 43 New, p. 1162, n. 78. (6) 9 C. J., p. 1262, n. 2.    (7) 31 C. J., p. 1022, n. 92.    (8) 31 C. J., p. 1022, n. 92.    (9) 9 C. J., p. 1266, n. 50.

8.  See 14 Cal. Jur. 127.

APPEAL from a judgment of the Superior Court of Napa County. Percy S. King, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles E. Trower, J. E. McCurdy and J. W. Colebord for Appellant.

E. M. Norton, J. R. Leppo, Fred W. McConnell and Robert Duncan for Respondents.

NOURSE, J.—The plaintiffs, who are husband and wife and both minors, sued the defendant for the rescission of a contract for the purchase of real and personal property, for the recovery of $20,000 paid under the contract, and for the cancellation of two promissory notes aggregating $30,000 and a promissory note of $55,000 and a chattel mortgage securing the same. Judgment went for the plaintiffs as prayed and the defendant has appealed upon the judgment-roll and a bill of exceptions.

On the 15th of November, 1920, the plaintiff Henry C. LeBaron was of the age of nineteen years and the plaintiff Leota LeBaron was of the age of seventeen years. They both sue herein through their guardian, Lora LeBaron, but the two minors will hereafter be referred to as the plaintiffs. On the date mentioned they entered into a written contract with the defendant corporation wherein the plaintiffs agreed to buy from the defendant real and personal property located in Napa County for the total purchase price of $340,000. Pursuant to the terms of the contract and at the time of its execution the plaintiffs paid to the defendant the sum of $20,000 in money and executed and delivered to it their two joint and several promissory notes each in the principal sum of $15,000, and also their joint and several promissory note in the sum of $55,000 secured by chattel mortgage on the personal property described in the written contract. The plaintiffs immediately entered into possession of the premises and continued in possession thereof until the tenth day of February, 1921, when possession was delivered to the defendant in accordance with their notice of disaffirmance and rescission which had been given to the defendant in writing on the twenty-eighth day

of January, 1921. The trial court held that at that time
the plaintiffs restored and returned to the defendant the
entire consideration moving to them from said defendant
under the contract, but that the defendant refused, and has
still refused, to return the sum of $20,000 which had been
paid by the plaintiffs and that it also refused to deliver
up or ·cancel any of the promissory notes or the chattel
mortgage. At the time of the execution of the contract
and as a part of the same transaction the defendant exe-
cuted to plaintiffs its bill of sale reciting that in consider-
ation of the sum of $62,500 all the personal property, in-
cluding a large number of farm implements, 20 head of
horses, 20 head of sheep, and approximately 1,100 head of
cattle was transferred to the plaintiffs and of this personal
property plaintiffs also took immediate possession. In the
agreement of sale of the premises the purchase price of the
real property was stated to be $277,500 and the purchase
price of the personalty was recited to be $62,500. On Janu-
ary 28, 1921, while both the plaintiffs were still in their
minority, they notified the defendant in writing that they
each disaffirmed and rescinded the contract and every part
thereof and then offered to restore to the defendant the
entire consideration for the contract and demanded the
return to them of everything of value received from them
by the defendant. On or about the first day of February
following the plaintiffs left the premises in the care of
competent employees and in accordance with stipulation of
counsel the actual transfer of possession from the plaintiffs
to the defendant took place on February 10th following,
without any of the parties hereto being present. From that
date on the defendant retained possession of all the prop-
erty, both real and personal, covered by the contract except
as hereinafter stated.

Included in the bill of sale of the personal property was
about 200 tons of hay and 20 tons of cottonseed meal.
During the plaintiffs' occupancy of the premises they fed
to the stock in their possession about 100 tons of this hay
and about 10 tons of the cottonseed meal. These were the
only items of all the property transferred which were not
returned to the defendant in kind and the trial court found
that the reasonable value of the hay used by the plaintiffs

was about $1,000 and that the reasonable value of the cotton-seed meal was about $800. It was found that this hay and meal had been fed to the cattle in the regular daily course of care and proper treatment of them and was necessary for the purpose of nourishing them and keeping them in a healthy condition. A second cause of action was in the form of a common count praying for judgment for $20,000 as for money had and received.

The defendant answered admitting the execution of the contract and the minority of the plaintiffs, but denying the allegation that they offered to restore the consideration for the contract and that they disaffirmed the same. As a separate defense the defendant alleged that the plaintiffs had wilfully and fraudulently concealed from the defendant the fact that each was a minor and had conducted them-selves in such a manner as to lead the defendant to believe that they were adults and competent to contract; that in accordance with the provisions of the written contract and the bill of sale hereinbefore referred to the defendant, on the fifteenth day of November, 1920, delivered to the plain-tiffs 1,100 head of cattle which were then of the reason-able value of $70 per head, but that between that date and the first day of February, 1921, said cattle had declined and diminished in value to the amount of $20 per head so that the total value thereof had decreased from $77,000 on November 15, 1920, to $55,000 on February 1, 1921. As a second defense the defendant alleged that as a part of the contract the plaintiffs had undertaken to till and plant to grain about 1,000 acres of the land conveyed and that they failed to do so to the damage of the defendant in the sum of $15,000. As a third defense the defendant alleged that by reason of the occupancy of said land by the plain-tiffs the defendant had been unable to secure a tenant for the premises; that the reasonable rental value for land for the year beginning November 15, 1920, was $15,000, and that the defendant was therefore damaged in that sum. As a counterclaim the defendant pleaded all the facts appear-ing in its first, second, and third defenses as just noted and claimed a set-off to the extent of the damages which they had pleaded in their various defenses. In this same pleading the defendant affirmatively alleged, contrary to the preceding denials in its answer, that the plaintiffs did, as

alleged in their complaint, notify the defendant of their election and intention to disaffirm and annul the contract and that they did propose to return to the defendant the consideration which they had received. As a second counterclaim the defendant pleaded that within the two years last past it had sold to the plaintiffs 100 tons of hay of the reasonable value of $1,500 and 20 tons of cottonseed meal of the reasonable value of $1,500.

As a first cross-complaint the defendant repeated the allegations of its first separate defense relating to the depreciation in the value of the cattle; as a second cause of action and cross-complaint it repeated the allegations relating to the plaintiffs' failure to till and sow the land; as a third cause of action and cross-complaint it repeated the allegations relating to the loss to the defendant through its inability to lease the premises; as a conclusion to the entire pleading the defendant prayed for judgment against the plaintiffs in the sum of $20,000.

The plaintiffs demurred to the answers, counterclaims, and cross-complaints and moved to strike out portions of each. The demurrer was sustained to certain portions and overruled as to other portions and the motion to strike out was granted to all those portions of the pleading relating to the depreciation in the value of the cattle, the loss through the failure to till and sow the land and the loss through the inability of the defendant to procure a tenant for the premises. It was denied as to the second counterclaim relating to the sale of the hay and cottonseed meal.

With the pleadings so framed the cause went to trial before the court without a jury and evidence was offered without contradiction tending to prove all the material allegations of the complaint. The written notice of disaffirmance and rescission of the contract, due service of which was admitted, was offered in evidence and from this it appears that on January 27, 1921, the plaintiffs notified the defendant in writing that because of their minority they elected to disaffirm, cancel, annul, and abrogate the agreement and every part thereof and that they thereby offered to restore to the defendant the entire consideration moving to them at the residence located upon the premises on the 10th of February, 1921. This notice contained the specific offer to restore the entire consideration for the agreement and

all property received by either of the plaintiffs and was ac-
companied by the demand that at the same time and place
the defendant return to them everything of value which it
had received from them and particularly the sum of $20,000
which they had paid on November 15, 1920.   Evidence was
further offered to the effect that by stipulation of counsel
for both parties neither of the principals would be required
to appear upon the premises on the day mentioned, but that
the transfer would be effected by counsel at that time with-
out any prejudice to either party by reason of the absence
of the principals.   The defendant offered no testimony in
contravention of the allegations of the complaint or in sup-
port of the allegations of its answers other than a witness
who was asked to testify as to the value of the cattle covered
by the contract.   An objection to this line of inquiry was
sustained and defendant's counsel thereupon offered to
prove by this and another witness that the value of said
cattle was on the fifteenth day of November, 1920, approxi-
mately $72 a head and that on the tenth day of February,
1921, they were valued from $18 to $20 less per head.   This
offer was also rejected and the defendant rested with the
stipulation that the reasonable value of the hay consumed
by the cattle during plaintiffs' occupancy of the premises
was $10 a ton.   During the course of the trial the defendant
brought out that as a part of the transaction of November
15, 1920, the defendant had conveyed to the plaintiffs all
his right, title, and interest in a certain cattle brand which
had been used by the corporation and that no reconveyance
of this cattle brand had been made to the defendant.   The
plaintiffs insisted that their offer to restore the entire con-
sideration was broad enough to include the cattle brand and
that they were at all times ready and willing to make such
transfer or conveyance thereof as the defendant might indi-
cate.   At the same time the plaintiffs executed a written
conveyance and quitclaim of all their right, title, and in-
terest in this cattle brand, but this the defendant refused
to accept.   The conveyance was thereupon filed with the
papers in the case and the plaintiffs renewed their offer in
open court to execute any paper which the defendant might
demand for the purpose of clearing up the title to the
cattle brand.

The case rests upon an interpretation of section 35 of the Civil Code, relating to the right of a minor to disaffirm his contract and which reads as follows: "In all cases other than those specified in sections thirty-six and thirty-seven, the contract of a minor, if made whilst he is under the age of eighteen, may be disaffirmed by the minor himself, either before his majority or within a reasonable time afterwards; or, in case of his death within that period, by his heirs or personal representatives; and if the contract be made by the minor whilst he is over the age of eighteen, it may be disaffirmed in like manner upon restoring the consideration to the party from whom it was received, or paying its equivalent." The appellant's position is that under this section a minor may not disaffirm his contract without restoration to the other party of the full value of the consideration which passed to the minor, while the respondents' position is that the section permits the restoration of the consideration in kind, or that if this cannot be done, the payment of its equivalent.

[1] Taking up the first item relating to the depreciation in value of the cattle it will be noted that the appellant in all portions of its answer alleged that the value of the cattle on November 15, 1920, was $70 per head and that the value of the same cattle on *February 1, 1921,* was $50 a head. These allegations are made in face of the written stipulation of the parties contained both in the written contract and in the bill of sale that the purchase price of all the personal property conveyed, including not only these same cattle but a number of horses, mules, sheep, chickens, and farm implements, and all the furniture of the house, was but $62,500 on November 15, 1920. Thus, without any explanation of this discrepancy the appellant has alleged that the value of the cattle alone was $77,000 or $14,500 more than the stipulated purchase price of all the personal property. In all portions of its pleading the appellant alleged that the value of the cattle had declined $20 per head on the first day of February, 1921. Inasmuch as the admitted pleadings all showed that all these cattle had been restored to the appellant on the tenth day of February, 1921, the value on the first day of that month was, of course, a matter of no importance. If their value could decrease so rapidly from November 15, 1920, to February 1, 1921, it is not

altogether improbable that this value might have increased from February 1st to February 10th, the day upon which they were returned to the possession of the appellant. In any event, the admitted pleadings are that on February 10, 1921, the appellant accepted the respondents' offer to restore the cattle and actually received them into its possession, and it does not appear in any portion of the pleadings what value they had at that time. There is, therefore, nothing in the pleadings to show that when the cattle were returned to the appellant they were not of the same value as when they were delivered to the respondents, or, in other words, that the respondents did not on February 10, 1921, restore to the appellant and that the appellant did not at the same time accept from the respondents the entire consideration so far as the cattle alone were concerned. All these pleadings regarding the rapid change in the value of the cattle are so contrary to human experience and common knowledge that they appear to be merely sham and frivolous, and the trial court must have viewed them in the same light when it granted the motion to strike out. If, however, any error occurred in striking out these pleadings the appellant was nevertheless at liberty upon the trial to prove that the respondents had not restored or offered to restore the full consideration. [2] For this purpose it offered to prove by a witness who was a cattle buyer in the neighborhood the value of the cattle on November 15, 1920. In attempting to qualify this witness for that purpose he testified that he had not seen these cattle since August 1, 1920. The question covering his opinion as to the value of those particular cattle per head on November 15, 1920, was objected to upon the ground that it was incompetent, immaterial, and irrelevant. This objection was sustained, and properly so. If, as alleged in their pleadings, these cattle were of such a nature that their value would change $20 per head in a period of two and a half months after November 15, 1920, the information of the witness on August 1st previous was not sufficient to qualify him to give an opinion as to their value on the later date. It is not, therefore, necessary to pass upon the legal question involved as to whether the restoration of the property in kind is sufficient under section 35 of the Civil Code, though the market value thereof has through no fault of the minors decreased since

the time of the execution of the contract because upon this feature of the case at least the trial court was sitting in equity and must have assumed from the character of the answer that the appellant was asking for equitable relief without clean hands.

[3] Appellant does not seriously claim error in the order striking out the portions of its pleading relating to the failure of the respondents to properly till and sow the land or as to the appellant's loss of the opportunity to lease the premises to another. The obvious answer to both propositions is that to permit appellant to recover on either issue would be nothing more than to award it damages for respondents' failure to carry out the contract. As under section 35 of the Civil Code a minor may disaffirm and rescind a contract by restoring the consideration, it is patent that the other party may not by way of counterclaim or crosscomplaint have a specific performance or recover damages for the minor's failure to carry out the terms of the contract which is rescinded. (See 1 Black on Rescission, sec. 312, pp. 790, 791.)

[4] Appellant makes mention of the point that at the time of the delivery of the possession of the premises the respondents did not actually transfer to the appellant by written conveyance their right to use the cattle brand. The facts are that the cattle brand itself was left upon the premises and the appellant had used it continuously from February 10, 1921, to the time of the trial. The written notice of disaffirmance expressly offered to transfer to the appellant the entire consideration which the respondents had received. This offer, it will be remembered, was conditional upon the return to the respondents of the consideration which the appellant had received. This condition the appellant refused to meet. It did, however, accept from the respondents all the real and personal property, including the cattle brand itself. It is also to be remembered that in the original complaint and during the trial of the action the respondents expressly renewed their offer and that during the course of the trial they specifically offered to execute any paper which the appellant might demand to cover the matter of the cattle brand. This offer was again refused and the appellant cannot be heard at this time to complain.

[5] The further contention is made that the trial court erred in refusing to allow the appellant a set-off upon its counterclaim for the use of the hay and cottonseed meal which had been fed to the cattle during the time of respondents' occupancy of the premises. The trial court made the general finding that the respondents had restored and returned to the appellant the entire consideration moving to them under the contract. Upon the special issue of the use of the hay and cottonseed meal the court found that the respondents fed to the cattle, purchased under the contract, about 100 tons of the hay and about 10 tons of the cottonseed meal, all of the reasonable value of $1,800, and "that said feeding of the said hay and meal to said cattle was done daily during said time in the regular daily course of proper care and treatment of said cattle, and was necessary for the purpose of sustaining and nourishing said cattle and keeping them in a healthy condition during said time. That all other hay and meal, except as fed to said cattle as aforesaid, were returned and restored." Inasmuch as it became respondents' duty, under section 35 of the Civil Code, to either restore the consideration received in kind or to pay its equivalent, the finding that they had done either in respect to the hay and meal would have been sufficient to support the judgment. We do not understand that the code section requires a restoration of the consideration in kind or a payment of its equivalent in cash. Payment of any obligation may be made in cash or other property when the obligatee is satisfied to accept other property in lieu of cash. When this is done the obligation is, of course, satisfied even though the terms of the obligation call for payment in cash. A reasonable interpretation of the findings of the trial court taken as a whole is that the entire consideration moving to the respondents under the contract was returned to the appellant either in kind or its equivalent; that the appellant accepted what was offered in satisfaction of respondents' obligation under the code section, and that there was, therefore, nothing due from the respondents to the appellant under any item of the transaction. During the period of respondents' occupancy of the premises they assumed the entire responsibility of caring for the ranch, as well as all the personal property transferred to them, including the feeding of the cattle and other livestock and all the

expense thereof was borne by the respondents. For this expense and service they were entitled to recoupment from the appellant, and it is fair to assume in support of the judgment that the trial court took all these matters into consideration when it found that the entire consideration moving to the respondents had been returned to the appellant. Though it is true that the respondents did not in their pleading demand compensation for their services in caring for the properties or for the expense incurred, the case was tried as if such pleading had been made, and the trial court therefore had before it all the evidence covering the question of the benefits which had come to the respondents out of the contract, as well as the matter of what they had outlayed for the benefit of the appellant. Offsetting the one against the other, the trial court found that the entire consideration moving to the respondents had been returned and we cannot say on the record before us that there was any error in this finding.

[6] The demands of the code section are that a minor over the age of eighteen years may disaffirm his contract upon restoring or offering to restore the consideration which he had received, but that if this cannot be done he must pay its equivalent. In seeking to avoid a contract under these circumstances the minor is governed in many respects by the ordinary rules relating to rescission of contracts in general, and in such a case, the action being in equity, the trial court is vested with a broad discretion to see that equity is done. [7] When the contract involved includes various classes of property and a number of separate transactions it is not necessary for the court in equity to segregate the contract into its separate parts and to demand a restoration in kind of the separate items of property involved, but where, as here, the contract is disaffirmed upon an offer to restore the *entire consideration* upon the condition of the return to the minors of the consideration which passed from them and the other parties accept from the minors the return of that which the minors claim to be the entire consideration which they received, the trial court should be permitted to balance the equities running through the entire transaction and to determine whether the consideration *or its equivalent* has not in fact been restored. [8] The purpose of the code section is to place the party dealing with

the minors *in statu quo* as far as this may be done either by the return of the entire consideration in kind or by the payment of its equivalent (which may be in cash, property, or benefits received). The reasonable interpretation of the finding of the trial court, taken as a whole, is that this has been done, and we are satisfied that in this respect the findings are sustained by substantial evidence.

[9] Finally it is argued that the trial court erred in awarding respondents interest on the sum of $20,000 from the date of payment rather than from the date of their disaffirmance of their contract. In reply the respondents point out that in so far as Leota LeBaron is concerned the contract in question was absolutely void, as she was at the time of its execution a minor under the age of eighteen years. As to the respondent Henry C. LeBaron, he being over the age of eighteen years at the time the contract was made, his contract became void *ab initio* upon his disaffirmance. This being so, the money paid to the appellant by the minors was in effect an advancement without legal consideration on their part. The appellant enjoyed the use of this money from the date of the execution of the contract and upon its recovery was liable for interest from that date.

Judgment affirmed.

Langdon, P. J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 29, 1926.