[Civ. No. 3290. Third Appellate District.—July 22, 1927.]

FRANCISCO PEREIRA, a Minor, etc., Respondent, v. JAMES V. TOSCANO, Appellant.

Edward Bickmore, A. R. Schottky and George P. Ross for Appellant.

Thomas F. Lopez and Hugh K. Landram for Respondent.

FINCH, P. J.—The plaintiff, a minor, by his guardian *ad litem,* brought this action to recover the amount which he alleges he paid on a contract for the purchase from defendant of a dairy business, livestock, and other personal property, and which contract the plaintiff disaffirmed on the ground of his minority. The court found in effect that the plaintiff had so paid the sum of $2,300, and that he had received from the sale of a part of the livestock the sum of $600, leaving a balance in his favor of $1,700. Judgment was entered accordingly and the defendant has appealed.

Appellant urges two grounds for reversal of the judgment: "First, that the evidence does not support or sustain the finding that plaintiff paid defendant the sum of $2,300 on account of the purchase price of said dairy. . . . Second, that the evidence does not sustain the finding that plaintiff disaffirmed said contract of purchase or offered to restore to the defendant the property and consideration received from defendant, and did further offer to pay defendant the equivalent of all property that plaintiff has received from defendant and could not return to defendant."

There is a substantial conflict in the evidence in some respects, but it is amply sufficient to support the findings. The evidence is clearly sufficient to establish the following facts: At the times of the transactions referred to herein, the defendant was president of the First National Bank of Los Banos, and his son, J. L. Toscano, was cashier thereof. Prior to December 1, 1920, the owner of a two-thirds interest in the dairy business and property involved in this action was indebted to the bank in the sum of $24,000, and J. L. Toscano took over the property and assumed such indebtedness. On December 1, 1920, he sold an undivided half of such dairy business and property to the plaintiff for the sum of $20,000, of which sum the plaintiff paid in cash $3,000. At the same time cross-defendant Cunha purchased the other half interest in the business and property. Prior to the time of such purchase the plaintiff and Cunha, as partners, owned 37 cows, for which they paid $4,400. Neither of them can read English. Without their knowledge, but apparently without any fraudulent intent, J. L. Toscano caused these 37 cows to be included in the contracts which he executed with plain-

tiff and Cunha, thus making them appear to be buying their own cows from him. In January, 1921, J. L. Toscano assigned his interest in such contracts and the property therein described to the defendant. In August, 1921, Cunha sold his undivided half of the business and property which he had purchased from J. L. Toscano to Antone Gonsalves. About the same time Cunha agreed to purchase the plaintiff's interest in the said 37 cows for $5,250. It was agreed that Cunha would pay this sum to the defendant, and that the latter would give the plaintiff credit for that amount. For the purpose of carrying out this agreement, the parties executed three instruments. The defendant and Cunha entered into what purports to be a conditional sales contract, by the terms of which the former agreed to sell and the latter to buy the 37 cows for $5,250, payment to be made in installments of $75 a month. The defendant executed and delivered to the plaintiff a receipt reading as follows: "Received from Francisco Pereira five thousand two hundred fifty dollars for account of dairy business. Balance due $12,250." Plaintiff's indebtedness under the old contract had increased to $17,500 by the accumulation of interest, and the defendant and the plaintiff executed a new conditional sales contract, by the terms of which the former agreed to sell to the latter the property purchased by the plaintiff from J. L. Toscano. The consideration expressed in the new contract was $12,250, being the amount due upon the old contract, less the credit given on account of the agreed price of the 37 cows. Two or three months thereafter the plaintiff orally notified the defendant that he disaffirmed the contract and demanded the return of the consideration given therefor. The plaintiff testified: "I told him to take the business back, that I was a minor and that I did not want the business, . . . that I did not have my age, . . . and if I was in arrears on the ranch to take it out of the . . . money that I had paid on the business. . . . Toscano said he did not owe me any money. . . . He said he would not take the business. Q. Did you ever have any further conversation with Toscano . . . about taking the business back? A. Yes, he went there once at the ranch. . . . Q. What conversation did you have with him on that occasion? A. I told him the same thing. . . . Q. And what did Toscano say? A. Well, what Toscano said, I don't

remember, . . . I was sitting down on the Ford and Toscano jumped on the machine and he wanted to choke my neck. Q. Did he say he would take the business, or would not take the business back? A. He said he would take the business back and for me to go away, that I had nothing there. . . . He said he would not give me any money." The defendant thereupon took back the business and property, but refused to return the consideration received by him from the plaintiff. Prior to the commencement of this action the defendant "branded the cattle with his brand."

The court found that the plaintiff received no profits from the business and no money "except the sum of $350 received by plaintiff from the sale of livestock" prior to the execution of the new contract and "the further sum of $250 . . . from the sale of part of the personal property and its increase" after the execution of such contract. Appellant has not called attention to any evidence tending to show that the amounts so found by the court are incorrect. The plaintiff testified that he received some money from the dairy, "but it was to pay bills. . . . everything was to pay bills," that there was no profit. It appears from testimony quoted by appellant that the property which the plaintiff sold consisted of calves and hogs. Such sales are ordinarily as much a part of the business in which plaintiff was engaged as the daily sales of milk and cream. Included in the property purchased by plaintiff from defendant were 90 cows, 20 heifers and 50 hogs. Plaintiff agreed to pay for the property in monthly installments of $100 each. At that rate it would have required more than ten years to complete the payments. It would be absurd to say that the parties contemplated the holding and accumulation of the livestock and the increase thereof for a period of ten years.

The sale of calves arriving in the dairy herd and of hogs when ready for the market did not constitute a conversion thereof by the plaintiff, but the amount received therefor must be treated as a part of the income of the business, and if, as plaintiff testified, the money so received was reasonably used in paying the expenses of the business, the plaintiff should not have been charged therewith. (*Le Baron* v. *Berryessa Cattle Co.*, 78 Cal. App. 536 [248 Pac. 779].)

The appellant has no cause to complain of the judgment against him for $2,300, less the offset judgment in his favor for $600. The trial court apparently treated the transactions of August, 1921, relative to the 37 cows, as a transfer of the plaintiff's interest therein to the defendant, and the sale thereof by defendant to Cunha. On this theory, the court required defendant to account, not for the amount which Cunha had agreed to pay him, the amount with which he had credited the plaintiff, but only one-half of the value of the 37 cows. At the time of the trial, which was about eighteen months after the transactions in question, Cunha testified that he had regularly paid the defendant $75 a month on the purchase price of the 37 cows. The judgment against the defendant is for the least possible amount consistent with any reasonable theory of the case, if the plaintiff is entitled to recover at all. By selling the 37 cows to Cunha, the defendant put it beyond his power to restore them to the plaintiff, and it would have been an idle act to have demanded the return thereof.

It is clear that the plaintiff's oral disaffirmance of the contract was sufficient. (*Spencer* v. *Collins*, 156 Cal. 298, 303 [20 Ann. Cas. 49, 104 Pac. 320].) The commencement of this action constituted a sufficient notice of disaffirmance. (*Abdullah* v. *Abdullah*, 50 Cal. App. 115, 119 [194 Pac. 511].) The foregoing testimony shows that the defendant would have refused any offer of restoration which the plaintiff might have made. The answer denies that the plaintiff had any right to a return of the consideration given by him in the purchase of the property and denies that plaintiff gave any consideration therefor. Any offer of restoration by the plaintiff, therefore, would have been futile. "It is a general rule that where necessary to the establishment of any right against another party, tender is waived or becomes unnecessary when it is reasonably certain that the offer will be refused." (24 Cal. Jur. 514.) As applied to the disaffirmance of their contracts by minors, it is said: "In accordance with the general rule governing tenders a tender sometimes may be excused, as where it is known that it will be refused." (31 C. J. 1074.) In cases such as this "the trial court is vested with a broad discretion to see that equity is done." (*Le Barron* v. *Berry-*

*essa Cattle Co., supra.*)  No abuse of such discretion appears in this case to the prejudice of defendant
The judgment is affirmed.

Glenn, J., *pro tem.*, and Plummer, J., concurred.