[Civ. No. 19600. Second Dist., Div. Three. Oct. 23, 1953.]

TED RADEN, Appellant, v. PIPER LAURIE et al., Defendants; CHARLOTTE JACOBS, Respondent.

Fred J. Martino for Appellant.

Bautzer, Grant, Youngman & Silbert and A. Fredric Leopold for Respondent.

Pauline Nightingale, Edward M. Belasco and Leon H. Berger as Amici Curiae on behalf of Respondent.

SHINN, P. J.—Plaintiff appeals from a summary judgment entered in favor of defendant Charlotte Jacobs. Rosetta Jacobs, also a defendant, was not served. Defendant's motion for summary judgment was heard upon the complaint, the answer of defendant, and affidavits of Charlotte Jacobs and plaintiff. The ground of the motion was that the action has no merit.

In January, 1948, by an undated writing signed by plaintiff, by Rosetta Jacobs and Charlotte Jacobs, plaintiff was employed as a nonexclusive manager of Rosetta Jacobs with the duty of "the securing of engagements for me in the motion picture, theatrical, radio, television and allied fields with and upon the consent of myself and my legal guardian, Mrs. Charlotte Jacobs, and in accordance with our wishes," for a consideration of 10 per cent of all moneys received from engagements obtained directly or indirectly by plaintiff. No time was specified for duration of the agreement. On July 30, 1948, a second agreement was entered into.[1]

---

[1] "July 30, 1948

Mr. Ted Raden
1177 N. Ardmore Ave.
Los Angeles 27, Calif.

"Dear Mr. Raden:

"This will set forth our agreement as follows:

"You have heretofore rendered your services to us in counseling and advising us in connection with the professional activities of the undersigned, Rosetta Jacobs (professionally known at this time as 'Piper Laurie') and generally assisting in her training and preparation for a professional career.

"The undersigned and each of them hereby employ you to continue the rendition of your services as our advisor and counsel and as business manager for the undersigned Rosetta Jacobs for the period commencing on the date hereof and extending up to and including the date when said Rosetta Jacobs shall reach her twenty first birthday to counsel and advise us in connection with all business and financial matters relating to the professional activities of the undersigned, Rosetta Jacobs, including but not limited to her dealings with agent representatives and employers.

"You hereby accept the said employment and agree to use your best efforts and devote so much of your time and attention as may reasonably be required in the rendition of your services hereunder. It is expressly agreed that you shall not be required to devote your entire time and attention to the rendition of your services hereunder, and that nothing herein contained shall be deemed to require you or authorize you to seek or obtain employment for the undersigned, Rosetta Jacobs. One of your duties hereunder shall be to counsel and advise us in connection with the selection and employment of agents to represent the undersigned, Rosetta Jacobs, from time to time in obtaining employment of her services. . . ." (Signatures.)

The agreement was signed by the three persons and it specified that plaintiff was to receive as compensation 10 per cent of all the professional earnings of Rosetta.

Plaintiff sued on the second agreement alleging that Rosetta Jacobs, who it seems uses the name of Piper Laurie, had earned a considerable sum of money for professional services and had paid none of it to plaintiff; $3,100 was demanded as plaintiff's share of the earnings. It appeared from the affidavit of Charlotte Jacobs, the mother of Rosetta, that the latter was a minor, born January 22, 1932, and that on October 12, 1949, Rosetta by means of a communication addressed to plaintiff and signed by one Benj. T. Weinstein, terminated and disaffirmed the agreement of July 30, 1948. The affidavit also asserted that when the January, 1948, agreement was executed plaintiff stated to Rosetta and Charlotte that he would obtain employment in the entertainment field for the former, and that the same was the understanding between the parties until the notice of disaffirmance; that during 1948 and 1949, plaintiff attempted unsuccessfully to obtain such employment and several times took Rosetta to places where entertainers might find employment. It was also alleged that plaintiff presented the July writing saying merely that it was "a better form." It was further alleged, and is conceded to be a fact, that plaintiff was not licensed as an employment agent or artists' manager, and that the agreement was not approved by the Labor Commissioner of the State of California. While it was alleged that plaintiff did not handle any money for Rosetta or any records or books for her, it was not alleged that he did not keep and perform his obligations under the July 30th agreement. Plaintiff filed an affidavit setting forth that he counseled and advised both defendants respecting Rosetta's career, and in his affidavit he detailed the services which he rendered in transforming her from a "reticent, bashful, introverted, unassuming personality, without appeal, conversational ability, poise, or any social equilibrium" into a mature, interesting, and attractive personality with poise and aplomb which brought forth her ability and possibilities. The affidavit admitted that plaintiff had taken Rosetta to places where entertainers might have found employment, but denied that it was for the purpose of obtaining employment, and alleged that it was for the general development and education of the young woman. It was denied in the affidavit that plaintiff stated to either of the defendants that he could or would obtain employment for Rosetta. It was alleged that the agreement of January, 1948, was merged in and superseded by the agreement of July 30, 1948. It was also alleged that defendant Charlotte contributed a sum of money which affiant

used to pay a part of the costs of a short motion picture which plaintiff caused to be written, directed and produced, starring Rosetta, and in which she made her professional debut. These services, it was alleged, continued over a period of more than a year and until Rosetta obtained a contract with Universal International Studio, at which time plaintiff was cast aside.

Plaintiff was not licensed as an artists' manager, theatrical manager or employment agent. It is said by respondent that her motion was granted upon the ground that plaintiff was either an unlicensed artists' manager or employment agent. The definition of artists' manager is contained in section 1650 of the Labor Code.[2] One is not an artists' manager unless he both advises, counsels and directs artists in the development or advancement of their professional careers, and also procures, offers, promises or attempts to procure employment or engagements for an artist ''only in connection with and as a part of the duties and obligations of such person under a contract with such artist by which such person contracts to render services of the nature above mentioned to such artist.'' Such is the clear wording of the statute.

We have experienced some difficulty in understanding defendant's construction of the section. It appears to be contended that one who is employed to advise, counsel and direct an artist, thereby promises to procure or attempt to procure employment for his principal; therefore, despite the language of the agreement, plaintiff was bound to seek employment for Rosetta; his efforts to do so were a part of his duties of counseling and advising and he was therefore an artists' manager.

The July agreement is explicit and unambiguous. It specifically provides that plaintiff has no authority and no duty to seek or obtain employment for Rosetta Jacobs. He is required only to give counsel and advice and to assist generally in her training for a professional career and the selection and employment of agents. Although it was alleged in the affidavit of Charlotte that plaintiff endeavored, unsuccessfully, to obtain

---

[2] ''An artists' manager is hereby defined to be a person, who engages in the occupation of advising, counseling, or directing artists in the development or advancement of their professional careers and who procures, offers, promises or attempts to procure employment or engagements for an artist only in connection with and as a part of the duties and obligations of such person under a contract with such artist by which such person contracts to render services of the nature above mentioned to such artist.''

employment for Rosetta, there was no showing that he procured, offered, promised or attempted to procure employment or engagements for Rosetta ''only in connection with and as a part of the duties and obligations of such person under a contract with such artist.'' It would seem clear that his duties were intentionally limited to the rendition of services which would not require his being licensed as an artists' manager.

Respondent says: ''It is the act of seeking employment, not the contract provision, which brings the legislation into play.'' This might be true if the contract were a mere sham and pretext designed by plaintiff to misrepresent and conceal the true agreement of the parties and to evade the law. But there was no evidence which would have justified the court in reaching that conclusion. There was no evidence of misrepresentation, fraud or mistake as to the terms of the contract nor as to plaintiff's obligations thereunder, nor evidence that defendants did not understand and willingly accept the limitation of plaintiff's duties. The assertions in defendant's affidavit that in January, 1948, plaintiff represented that he could and would obtain employment for Rosetta, while immaterial, were denied in plaintiff's affidavit. By the former agreement plaintiff undertook to seek engagements for Rosetta and to act as her manager, but not so under the July agreement.

In the absence of any evidence that the July 30th agreement was a mere subterfuge or otherwise invalid the court was required to give effect to its clear and positive provisions. It was to be presumed that the parties acted in good faith. If there was a doubt whether the later agreement was entered into in good faith, as a substitute for the earlier one, and that it expressed the real intentions of the parties, it should have been resolved in favor of plaintiff. These were not questions to be decided on a motion for summary judgment. (*Gale* v. *Wood,* 112 Cal.App.2d 650 [247 P.2d 67]; *Grueninger* v. *Livingstone & Co.,* 90 Cal.App.2d 266 [202 P.2d 785].)

In plaintiff's affidavit it was also denied that plaintiff had promised, or that he attempted to obtain engagements or employment for Rosetta.

On the motion for summary judgment the averments of plaintiff's affidavit should have been taken as true. (*Weichman* v. *Vetri,* 100 Cal.App.2d 177 [223 P.2d 288]; *Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553 [122 P.2d 264]; *United States Fid. & Guar. Co.* v. *Sullivan,* 93 Cal.App.2d 559 [209

P.2d 429].) ██ Therefore, plaintiff's denial that he agreed or endeavored to obtain engagement or employment for Rosetta was a sufficient answer to the motion for summary judgment.

Since plaintiff was employed only to counsel and advise Rosetta and to act as her business manager in matters not related to obtaining engagements for her, he was not acting as an ''Employment Agency'' as defined by section 1551, Labor Code.

The Labor Commissioner has filed an amicus brief in which he contends that the later agreement was a sham and subterfuge designed to conceal the fact that plaintiff was acting as an artists' manager. Upon the evidence that was before the court this contention, of itself, presents an issue for regular trial procedure.

██ We find no merit in the claim that the disaffirmance of the agreement by the minor operated to terminate the obligation of Charlotte Jacobs who, presumably, was entitled to receive the earnings of her daughter, and was one of plaintiff's employers.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 17, 1953. Edmonds, J., and Traynor, J., were of the opinion that the petition should be granted.