[Civ. No. 24382. First Dist., Div. One. Sept. 15, 1967.]

MARTYN BUCHWALD et al., Petitioners v. THE SUPE-
 RIOR COURT OF THE CITY AND COUNTY OF SAN
 FRANCISCO, Respondent; MATTHEW KATZ, Real
 Party in Interest.

Maxwell Keith for Petitioners.

Andrew H. D'Anneo, Louis Giannini, Douglas M. Phillips and Bruce Weathers as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Howard L. Thaler for Real Party in Interest.

Irmas & Rutter and Michael R. Shapiro as Amici Curiae on behalf of Real Party in Interest.

ELKINGTON, J.—By their "Petition for Writ of Review (and/or, in the Alternative, a Writ of Prohibition or Mandamus)" petitioners seek review of orders of the superior court in an action commenced by them against Matthew Katz, hereinafter referred to as Katz, who is here the real party in interest. Concerned is the Artists' Managers Act which we shall hereafter refer to as the Act.

The Act comprises sections 1700-1700.46 of the Labor Code.[1] It is found in division 2, part 6 of that code, relating to "Employment Agencies." It requires licensing, and regulates the business, of artists' managers.[2]

The Act is a remedial statute. Statutes such as the Act are designed to correct abuses that have long been recognized and which have been the subject of both legislative action and judicial decision. (See *Collier & Wallis, Ltd.* v. *Astor*, 9 Cal.2d 202, 206 [70 P.2d 171].) Such statutes are enacted for the protection of those seeking employment. (See *Smith* v.

---

[1]Unless otherwise indicated, all statutory references herein will be to the Labor Code.

[2]Section 1700.4 defines artists' managers as follows: "An artists' manager is hereby defined to be a person who engages in the occupation of advising, counseling, or directing artists in the development or advancement of their professional careers and who procures, offers, promises or attempts to procure employment or engagements for an artist only in connection with and as a part of the duties and obligations of such person under a contract with such artist by which such person contracts to render services of the nature above mentioned to such artist."

*La Farge*, 242 Cal.App.2d 806, 808-809 [51 Cal.Rptr. 877].)
They properly fall within the police power of the state (*Collier & Wallis, Ltd.* v. *Astor, supra*) and their constitutionality has been repeatedly affirmed. (See *Garson* v. *Division of Labor Law Enforcement*, 33 Cal.2d 861, 864 [206 P.2d 368]; *Collier & Wallis, Ltd.* v. *Astor, supra*; *Smith* v. *La Fafarge, supra*, at p. 811.)

Since the clear object of the Act is to prevent improper persons from becoming artists' managers and to regulate such activity for the protection of the public, a contract between an unlicensed artists' manager and an artist is void. (See *Wood* v. *Krepps*, 168 Cal. 382, 386 [143 P. 691. L.R.A. 1915B 851]; *Loving & Evans* v. *Blick*, 33 Cal.2d 603. 608-609 [204 P.2d 23]; *Albaugh* v. *Moss Constr. Co.*, 125 Cal.App.2d 126, 131-132 [269 P.2d 936]; 1 Witkin, Summary of Cal. Law (1960) Contracts, § 171, p. 185.) Contracts otherwise violative of the Act are void (see *Severance* v. *Knight-Counihan Co.*, 29 Cal.2d 561, 568 [177 P.2d 4, 172 A.L.R. 1107]; *Smith* v. *Bach*, 183 Cal. 259, 262 [191 P. 14]; 1 Witkin, *op. cit.*, § 157, p. 167). And as to such contracts, artists, being of the class for whose benefit the Act was passed, are not to be ordinarily considered as being *in pari delicto.* (See *Lewis & Queen* v. *N. M. Ball Sons*, 48 Cal.2d 141, 153 [308 P.2d 713], and authorities there cited.)

Section 1700.44 of the Act, as pertinent here, provides: "In all cases of controversy arising under this chapter the parties involved shall refer the matters in dispute to the Labor Commissioner, who shall hear and determine the same, subject to an appeal within 10 days after determination, to the superior court where the same shall be heard de novo."

Petitioners constitute a professional musical group known as the "Jefferson Airplane." They are "artists" as defined by section 1700.4 of the Act. Each petitioner entered into a separate and identical contract with Katz, who for a percentage of each petitioner's earnings undertook, among other things, to act as "exclusive personal representative, advisor and manager in the entertainment field." The contract contained a provision reading: "It is clearly understood that you [Katz] are not an employment agent or theatrical agent, that you have not offered or attempted or promised to obtain employment or engagements for me, and you are not obligated, authorized or expected to do so." It also provided for arbitration of any dispute thereunder in accordance with the rules of the American Arbitration Association.

A dispute arose between the petitioners and Katz in relation to the subject matter of the contract. Katz thereupon, on September 21, 1966, commenced proceedings with the arbitration association seeking to compel arbitration of the dispute.

On October 18, 1966, petitioners filed with the Labor Commissioner a "Petition to Determine Controversy," alleging among other things: "Complainants complain that in September of 1965, defendant [Matthew Katz] acting as an artists-manager and through false and fraudulent statements and by duress, caused complainants to sign with defendant as an artists-manager; that defendant, prior to the time of signing said contracts, promised the complainants and each of them that he would procure bookings for them; that defendant thereafter procured bookings for the complainants and insisted that the complainants perform the bookings procured by him; that complainants sought to procure their own bookings, and that defendant refused them the right to procure their own bookings; that at the time that said contracts were negotiated, defendant Matthew Katz was not licensed as an artists-manager pursuant to the provisions of the California Labor Code, Section 1700.5;[3] that the contract presented to each complainant was not submitted to the Labor Commissioner, State of California, as required under Section 1700.23;[4] that Matthew Katz has not performed in accordance with Sections 1700.24. 1700.25, 1700.26, 1700.27, 1700.28, 1700.31, 1700.32, 1700.36 and 1700.40 of the Labor Code and other provisions of the Labor Code; that Matthew Katz never rendered an accounting to the complainants for thousands of dollars received by Mr. Katz for their services; that Matthew Katz has not allowed complainants to inspect the books and records maintained by Matthew Katz with respect to fees earned by the complainants; that Matthew Katz has and continues to obtain payments intended for one or more of the above complainants and has cashed checks intended for one or more of the above complainants for his own use and benefit."

Katz appeared and filed his answer to the petition, in which he objected to the jurisdiction of the Labor Commissioner and

---

[3]Section 1700.5, as pertinent here, provides: "No person shall engage in or carry on the occupation of an artists' manager without first procuring a license therefor from the Labor Commissioner."

[4]Section 1700.23, as pertinent here, provides: "Every artists' manager shall submit to the Labor Commissioner a form or forms of contract to be utilized by such artists' manager in entering into written contracts with artists for the employment of the services of such artists' managers by such artists, and secure the approval of the Labor Commissioner thereof."

denied that he had agreed to act, or that he was or had been acting, as an artists' manager.

On October 21, 1966 while the Labor Commissioner proceedings were pending, petitioners filed an action against Katz in the superior court, seeking relief, among other things, that Katz be restrained from proceeding before the arbitration association.

In the superior court action Katz appeared and moved the court to order petitioners to arbitrate as provided by the contracts, and to restrain the proceedings before the Labor Commissioner. Petitioners opposed Katz' motion contending that a bona fide controversy existed before the Labor Commissioner as to whether Katz had agreed to act, and had been acting as their artists' manager, and as to the legality and validity of the contracts. They contended that the language of the contracts "you have not offered, or attempted or promised to obtain employment or engagements for me, etc." was but a subterfuge to conceal the fact that Katz did act, and had agreed to act, as an artists' manager. Evidence was introduced by petitioners in support of their contentions. Katz offered evidence to the contrary.

The court thereafter on January 17, 1967 made its orders denying petitioners' motion to restrain arbitration; restraining petitioners from proceeding further before the Labor Commissioner; and ordering them to arbitrate their dispute before the arbitration association. These orders are the subject of the instant proceedings.

Real party in interest Katz has rather clearly stated the issues to be determined in this proceeding. Our discussion will follow the contentions as presented by him.

FIRST CONTENTION: *Neither certiorari, prohibition nor mandamus is a proper remedy.*

█ It appears that the superior court's orders constitute completed judicial acts. If the orders were in excess of the court's jurisdiction and if there is available neither appeal nor other plain, speedy and adequate remedy, certiorari is proper. (See 3 Witkin, Cal. Procedure (1954) Extraordinary Writs, pp. 2490-2493.)

An appeal does not lie from an order compelling arbitration (*Corbett* v. *Petroleum Maintenance Co.*, 119 Cal.App.2d 21 [258 P.2d 1077]) ; nor is any other plain, speedy or adequate remedy apparent. We consider certiorari to be the proper remedy.

SECOND CONTENTION: *The Artists' Managers Act does not give the Labor Commissioner jurisdiction over an artists' manager who is not licensed as such by the commissioner.*

Admittedly Katz was not licensed as an artists' manager.

The Act, section 1700.3, defines "licensee" as an "artists' manager which holds a valid, unrevoked, and unforfeited license. . . ." Section 1700.4 defines "artists' manager" (see fn. 2, *ante*).

Certain sections, i.e., 1700.17, 1700.19, 1700.21, 1700.42, 1700.43, refer to licensee in such context that the word can reasonably apply only to a licensed artists' manager. Other sections, including those which are the subject of the Petition to Determine Controversy, refer to artists' manager in such manner that they apply reasonably to both licensed and unlicensed artists' managers. The Act thus refers to and covers two classes of persons, "licensees" who are artists' managers with valid licenses, and "artists' managers" who may or may not be so licensed.

■ " 'It is well settled that a legislative body has the power within reasonable limitations to prescribe legal definitions of its own language, and when an act passed by it embodies a definition it is binding on the courts.' " (*Application of Monrovia Evening Post,* 199 Cal. 263, 269-270 [248 P. 1017]; see also *People* v. *Western Air Lines, Inc.,* 42 Cal.2d 621, 638 [268 P.2d 723]; *In re Miller,* 31 Cal.2d 191, 198 [187 P.2d 722].) ■ If possible, significance should be given to every word and phrase of an act in pursuance of the legislative purpose. (*Select Base Materials* v. *Board of Equalization,* 51 Cal.2d 640, 645 [335 P.2d 672]; *People* v. *Hampton,* 236 Cal.App.2d 795, 801 [46 Cal.Rptr. 338]; *Brown* v. *Cranston,* 214 Cal.App.2d 660, 672-673 [29 Cal.Rptr. 725].)

■ Remedial statutes should be liberally construed to effect their objects and suppress the mischief at which they are directed (*Lande* v. *Jurisich,* 59 Cal.App.2d 613, 616-617 [139 P.2d 657]; see also *Union Lbr. Co.* v. *Simon,* 150 Cal. 751, 757 [89 P. 1077, 1081]; 45 Cal.Jur.2d, Statutes, § 182, p. 681). It would be unreasonable to construe the Act as applying only to licensed artists' managers, thus allowing an artists' manager, by nonsubmission to the licensing provisions of the Act, to exclude himself from its restrictions and regulations enacted in the public interest. ■ "Statutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers—one that is practical rather than technical, and

that will lead to wise policy rather than to mischief or absurdity.'' (45 Cal.Jur.2d, Statutes, § 116, pp. 625-626.)

We conclude that artists' managers (as defined by the Act), whether they be licensed or unlicensed, are bound and regulated by the Artists' Managers Act.

THIRD CONTENTION: *By virtue of his written contract, Katz as a matter of law is not an artists' manager and therefore is not subject to the Artists' Managers Act.*

The Act gives the Labor Commissioner jurisdiction over those who are artists' managers in fact. The petition filed with the Labor Commissioner alleges facts which if true indicate that the written contracts were but subterfuges and that Katz had agreed to, and did, act as an artists' manager. Clearly the Act may not be circumvented by allowing language of the written contract to control—if Katz had in fact agreed to, and had acted as an artists' manager. The form of the transaction, rather than its substance would control.

"It is a fundamental principle of law that, in determining rights and obligations, substance prevails over form." (*San Diego Federation of Teachers* v. *Board of Education,* 216 Cal.App.2d 758, 764 [31 Cal.Rptr. 146]; Civ. Code, § 3528.) This principle is recognized in a case Katz cites and relies upon, *Pawlowski* v. *Woodward,* 122 Misc. 695 [203 N.Y.S. 819, 820], where the court said, "This contract is no subterfuge to evade the General Business Law. An employment agency could not circumvent the statute by putting its contract to procure employment for an artist in the form of an agreement for management."

The court, or as here, the Labor Commissioner, is free to search out illegality lying behind the form in which a transaction has been cast for the purpose of concealing such illegality. (*Lewis & Queen* v. *N. M. Ball Sons, supra,* 48 Cal.2d 141, 148.) "The court will look through provisions, valid on their face, and with the aid of parol evidence, determine that the contract is actually illegal or is part of an illegal transaction." (1 Witkin, Summary of Cal. Law (1960) Contracts, § 157, p. 169.)

In support of his position that as a matter of law he is not an artists' manager Katz cites *Raden* v. *Laurie,* 120 Cal.App. 2d 778 [262 P.2d 61]. That case, decided in 1953, concerned the Private Employment Agencies Act, sections 1550-1650 (also found in part 2, div. 6 relating to "Employment Agencies") which at that time regulated persons doing business as artists' managers.

Raden was employed by Laurie, an actress, as a counselor and advisor under a written contract which specified he was to receive 10 percent of Laurie's professional earnings. Among other things the contract provided: " 'It is expressly agreed that . . . nothing herein contained shall be deemed to require you or authorize you to seek or obtain employment for the undersigned [Laurie].' " (120 Cal.App.2d at p. 779.) Raden was not paid his 10 percent so he sued in the superior court. As to the subject matter of the complaint the superior court clearly had jurisdiction. Laurie moved for summary judgment, alleging the suit to be without merit. (Code Civ. Proc., § 437c.) She contended the contract was invalid because it was a subterfuge used by an artists' manager who had not complied with the Private Employment Agencies Act. The motion for summary judgment was granted by the superior court.

The appellate court reversed, stating as follows (at p. 782) : "It would seem clear that his [Raden's] duties were intentionally limited to the rendition of services which would not require his being licensed as an artists' manager. Respondent says: 'It is the act of seeking employment, not the contract provision, which brings the legislation into play.' This might be true if the contract were a mere sham and pretext designed by plaintiff to misrepresent and conceal the true agreement of the parties and to evade the law. But there was no evidence which would have justified the court in reaching that concluion. There was no evidence of misrepresentation, fraud or mistake as to the terms of the contract nor as to plaintiff's obligations thereunder, nor evidence that defendants did not understand and willingly accept the limitation of plaintiff's duties. . . . *In the absence of any evidence that the July 30th agreement was a mere subterfuge or otherwise invalid the court was required to give effect to its clear and positive provisions.* . . . Since plaintiff was employed only to counsel and advise [Laurie] and to act as her business manager in matters not related to obtaining engagements for her, he was not acting as an 'Employment Agency' as defined by section 1551, Labor Code." (Italics added; pp. 782-783.)

The inapplicability of *Raden* v. *Laurie* to the instant controversy is obvious. There, on a motion for summary judgment, no showing, prima facie or otherwise, was made (as regards the contract sued upon or its subject matter) that Raden had agreed to act, or had acted as an artists' manager (or employment agency). The District Court of Appeal found

no evidence which would support a conclusion that the contract was a sham or pretext designed to conceal the true agreement or to evade the law. On the uncontroverted facts the court had jurisdiction over the controversy and the Labor Commissioner did not. In the proceedings before us a prima facia showing was made to the Labor Commissioner as to matters over which he had jurisdiction.

FOURTH CONTENTION: *The superior court had jurisdiction over the controversy referred to the Labor Commissioner by petitioners.*

The Artists' Managers Act (enacted in 1959) so far as we can determine, has never been mentioned in the reported decisions of the courts of this state. However, an earlier, similar and in many respects identical, statute has been frequently interpreted. This statute is the previously referred to Private Employment Agencies Law (§§ 1550-1650). Both statutes are, as previously stated, contained in part 6 (entitled "Employment Agencies") of division 2 of the Labor Code. Each is an outgrowth of a 1913 statute relating to employment agencies. (See Stats. 1913, ch. 282, p. 515, and amendments thereto.) Indeed, section 1700.44. previously quoted and on which the instant dispute is focused was taken word for word from section 1647 of the Private Employment Agencies Law, which language in turn was taken in its entirety from an amendment to the 1913 statute. (See Stats. 1923, ch. 412, p. 936.)

" 'It is a cardinal principle of statutory construction that where legislation is framed in the language of an earlier enactment on the same or an analogous subject, which has been judicially construed, there is a very strong presumption of intent to adopt the construction as well as the language of the prior enactment. . . .' " (*Greve* v. *Leger, Ltd.,* 64 Cal.2d 853, 865 [52 Cal.Rptr. 9, 415 P.2d 824]; *Union Oil Associates* v. *Johnson,* 2 Cal.2d 727, 734-735 [43 P.2d 291, 98 A.L.R. 1499].)

Applying to the Act the construction given to its sister and parent statutes the following appears: The Act is broad and comprehensive. The Labor Commissioner is empowered to hear and determine disputes under it, *including the validity of the artists' manager-artist contract* and the liability, if any, of the parties thereunder. (See *Garson* v. *Division of Labor Law Enforcement,* 33 Cal.2d 861, 866 [206 P.2d 368].) He may be compelled to assume this power. (*Bollotin* v. *Workman Service Co.,* 128 Cal.App.2d 339, 341 [275 P.2d

599].) In the settlement of disputes the jurisdiction of the Labor Commissioner is similar to, but broader, than the power of an arbitrator under Code of Civil Procedure sections 1280-1294.2. (*Robinson* v. *Superior Court,* 35 Cal.2d 379, 387 [218 P.2d 10] ; *Garson* v. *Division of Labor Law Enforcement, supra,* 33 Cal.2d 861, 865.) The Labor Commissioner's awards are enforceable in the same manner as awards of private arbitrators under Code of Civil Procedure sections 1285-1288.8.[5] (See *Robinson* v. *Superior Court, supra,* 35 Cal.2d 379, 388.)

Section 1700.44 of the Act is mandatory. It provides that the parties involved, artists and artists' manager, in any controversy arising under the Act, *shall* refer the matters in dispute to the commissioner.[6] (See *Garson* v. *Division of Labor Law Enforcement, supra,* 33 Cal.2d 861, 864; *ABC Acceptance* v. *Delby,* 150 Cal.App.2d Supp. 826, 827 [310 P.2d 712] ; *Abraham Lehr, Inc.* v. *Cortez,* 57 Cal.App.2d 973, 975-976 [135 P.2d 684].) It has been held under the Private Employment Agencies Law that the commissioner has original jurisdiction, to the exclusion of the superior court, over controversies such as those here involved. In *Collier & Wallis, Ltd.* v. *Astor, supra,* 9 Cal.2d 202, the plaintiff, a private employment agency, sued Mary Astor, an artist, to recover on a contract relating to her employment. At that time the previously mentioned predecessor (1913) statute to both the Private Employment Agency Law and the Act contained the provision concerning reference of matters in dispute to the Labor Commissioner which is presently found in the Private Employment Agencies Law. As the dispute had not been submitted to the Labor Commissioner the court held the action in the superior court to be premature. The court (p. 204) stated: "It is conceded that the respondent did not, before commencing this action, refer 'the matter in dispute' to the commissioner of labor, and consequently that official made no determination of said matter before this action was commenced. Therefore if this section of said act is a valid legislative act *the point made by appellant that this action was prematurely brought must be sustained.*" (Italics added.)

The holding of *Collier & Wallis, Ltd.* v. *Astor, supra,* as to premature superior court filing has been consistently followed

---

[5]The Act, section 1700.45, under conditions not applicable or relevant here, allows private arbitration of a dispute between an artists' manager and artist.

[6]Although the Act says " 'the parties involved shall refer the matters in dispute' " it is sufficient if one of the parties shall submit the controversy. (See *Bess* v. *Park,* 144 Cal.App.2d 798, 805 [301 P.2d 978].)

in cases under the Private Employment Agencies Law. (See *Garson* v. *Division of Labor Law Enforcement, supra,* 33 Cal.2d 861, 864; *ABC Acceptance* v. *Delby, supra,* 150 Cal. App.2d Supp. 826, 828; *Bess* v. *Park, supra,* 144 Cal.App.2d 798, 806; *Abraham Lehr, Inc.* v. *Cortez, supra,* 57 Cal.App.2d 973, 977.)

Since the instant controversy was pending before, and was properly within the jurisdiction of, the Labor Commissioner, the doctrine of "exhaustion of administrative remedies" applies. This well known concept is expressed in *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 292-293 [109 P.2d 942, 132 A.L.R. 715], as "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act. . . . It is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of *stare decisis,* and binding upon all courts." (See also 2 Cal.Jur.2d, Administrative Law, § 184, p. 304; 1 Witkin, Cal. Procedure (1954) pp. 316, 578.)

 We hold as to cases of controversies arising under the Artists' Managers Act that the Labor Commissioner has original jurisdiction to hear and determine the same to the exclusion of the superior court, subject to an appeal within 10 days after determination, to the superior court where the same shall be heard de novo. (See § 1700.44.)

FIFTH CONTENTION: *The petitioners waived any right they may have had to proceed before the Labor Commissioner by filing their action in the superior court.*

 It appears that the superior court action was brought primarily to restrain Katz from proceeding to arbitrate the dispute before the American Arbitration Association. This is in no way inconsistent with the proceedings before the Labor Commissioner and cannot be deemed an "intentional or voluntary relinquishment of a known right" (see Black's Law Dictionary (4th ed.) p. 1751) to proceed before the commissioner. Nor may one waive the benefits of a statute established for a public reason (Civ. Code, § 3513), as were the Labor Code provisions here. (See *Collier & Wallis, Ltd.* v. *Astor, supra,* 9 Cal.2d 202, 206; *Smith* v. *LaFarge, supra,* 242 Cal. App.2d 806, 811.) At most the superior court action was premature. (See *Garson* v. *Division of Labor Law Enforcement, supra,* 33 Cal.2d 861, 864; *Collier & Wallis, Ltd.* v. *Astor, supra,* at p. 204; *ABC Acceptance* v. *Delby, supra,* 150

Cal.App.2d Supp. 826, 828; *Bess* v. *Park, supra,* 144 Cal. App. 798, 806; *Abraham Lehr, Inc.* v. *Cortez, supra,* 57 Cal.App.2d 973, 977.)

And since the Act gives initial jurisdiction of the controversy here to the Labor Commissioner neither party could confer such jurisdiction on the court for "jurisdiction may not be waived by a party or conferred on the court by consent." (*Sampsell* v. *Superior Court,* 32 Cal.2d 763, 773 [197 P.2d 739]; see also *Harrington* v. *Superior Court,* 194 Cal. 185, 188 [228 P. 15]; *Taylor* v. *Taylor,* 192 Cal. 71, 78 [218 P. 756, 51 A.L.R. 1074]; *ABC Acceptance* v. *Delby, supra,* 150 Cal.App.2d Supp. 826, 828.)

SIXTH CONTENTION: *Private arbitration being permissible under the Act (§ 1700.45) and the parties having agreed to arbitrate before the American Arbitration Association, the orders of the superior court were proper.*

█ This argument overlooks the basic contention of petitioners that their agreement with Katz is wholly invalid because of his noncompliance with the Act. If the agreement is void no rights, including the claimed right to private arbitration, can be derived from it.

*Loving & Evans* v. *Blick, supra,* 33 Cal.2d 603, 610, states: "It seems clear that the power of the arbitrator to determine the rights of the parties is dependent upon the existence of a valid contract under which such rights might arise. [Citations.]" (See also 1 Witkin, Summary of Cal. Law (1960) Contracts, § 165, p. 177.)

SEVENTH CONTENTION: *The superior court had jurisdiction to determine, as in Raden v. Laurie, supra, 120 Cal.App.2d 778, whether the controversy here in question fell within the Act's grant of jurisdiction to the labor commissioner.*

In *Raden* v. *Laurie,* as previously stated, the District Court of Appeal found no evidence on a motion for summary judgment to support Laurie's contention that Raden agreed to or did act as an artists' manager. █ Here a prima facie showing was made to the Labor Commissioner that Katz had so agreed and had so acted. The Labor Commissioner had the power and the duty to determine, in the first instance, whether the controversy was within the Act's grant of jurisdiction. See *United States* v. *Superior Court,* 19 Cal.2d 189, 195 [120 P.2d 26], where the court stated: "[I]t lies within the power of the administrative agency to determine in the

first instance, and before judicial relief may be obtained, whether a given controversy falls within a statutory grant of jurisdiction.''

We conclude that petitioners are entitled, by way of certiorari, to the relief sought by them. The orders of the superior court dated January 17, 1967 are annulled.

Molinari, P. J., and Brown (H. C.), J.,* concurred.

A petition for a rehearing was denied September 29, 1967, and the petition of the real party in interest for a hearing by the Supreme Court was denied November 8, 1967.

*Assigned by the Chairman of the Judicial Council.