**GEORGE FOREMAN ASSOCIATES, LTD., a limited partnership, Plaintiff,**

v.

**George FOREMAN et al., Defendants.**

**George FOREMAN and Charles R. Sadler, Counterclaimants and Cross-Claimants,**

v.

**GEORGE FOREMAN ASSOCIATES, LTD., a limited partnership, and Martin Erlichman, Counterdefendants and Cross-Defendants.**

**George FOREMAN and Charles R. Sadler, Plaintiffs,**

v.

**GEORGE FOREMAN ASSOCIATES, LTD., a Pennsylvania limited partnership, and Martin Erlichman, Defendants.**

**Civ. A. Nos. C-73-1483 RFP, C-73-1230 RFP.**

United States District Court, N. D. California.

March 25, 1974.

Frederick P. Furth, John H. Boone, Clyde W. Stitt and Daniel S. Mason, Law Offices of Frederick P. Furth, San Francisco, Cal., for plaintiff and counterdefendants George Foreman Associates, Ltd. and Martin Erlichman.

Stephen V. Bomse and Robert J. Vizas, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendants and counterclaimants George Foreman, Charles R. Sadler and George Foreman Development Corp.

John W. Keker, Kipperman, Shawn & Keker, San Francisco, Cal., for defendant Leroy Jackson.

PECKHAM, District Judge.

These two related cases arise out of a series of contracts entered into by George Foreman, the recognized world heavyweight boxing champion; Charles R. "Dick" Sadler, his manager and trainer; Martin Erlichman; and George Foreman Associates, Ltd. (Associates), a partnership. In No. C–73–1230 RFP, plaintiffs Foreman and Sadler seek relief from the most recent of these contracts, and have moved for summary judgment on the grounds that the most recent contract is illegal under California law and therefore void and unenforceable; defendant Associates, by way of counterclaim, seeks a declaration that the contract is valid and enforceable and further seeks a preliminary injunction compelling plaintiffs to comply with the terms of the contract. In No. C–73–1483 RFP, plaintiff Associates seeks injunctive relief compelling defendants Foreman, Sadler, Leroy Jackson (Foreman's business manager), and George Foreman Development Corporation (Development) to abide by the contract, and defendants

Foreman and Sadler assert the invalidity of the contract by way of defense and counterclaim; Associates has moved in this action for a preliminary injunction, and has further moved to have defendants adjudged to be in contempt of a stipulated preliminary injunction entered on August 28, 1973, while Foreman and Sadler have moved for summary judgment on their defense of illegality of the contract. For convenience, this memorandum and order will embrace all the pending motions in both cases.

## I. FACTS

The initial contract between the parties to these actions was entered into in October, 1971, by Foreman, Sadler and Erlichman. The precise details of this contract (hereinafter referred to as "the 1971 Agreement") are immaterial; in broad terms, it required Erlichman to render certain promotional services and make certain payments to Foreman in exchange for the right to receive 50 percent of Foreman's revenues (except for live boxing gate receipts). Shortly thereafter, Erlichman assigned his rights under the contract to Associates, a partnership formed for the express purpose of accepting that assignment.

Disputes arose almost immediately over the performance by all parties of their obligations under the 1971 Agreement. The resulting flood of litigation was ultimately settled by the parties' acquiescence in a new contract ("the 1972 Agreement") entered into on December 1, 1972, by Foreman, Sadler and Associates. It is this 1972 Agreement which is at issue in the present actions.

Under the 1972 Agreement, Foreman and Sadler are employed by Associates for participation in live boxing performances and for promotional activities in connection with those performances. Foreman and Sadler are given sole responsibility for the timing and location of all fights and for the negotiation of financial arrangements; Associates has no active part in any negotiations or promotional activities, except that it re-

tains the right to approve or disapprove financial arrangements as long as such approval is not unreasonably withheld. Disputes as to the reasonableness of withholding of approval by Associates are to be referred to an arbitrator. Associates agrees to pay Foreman $10,000 per year for five years to cover training expenses, and an additional $25,000 per year for nine years, ending with the termination of the agreement on October 7, 1981. In exchange for these payments, Associates is given the right to receive 25 percent of Foreman's "promotional receipts," which include live gate and television receipts as well as virtually all receipts from endorsements and personal appearances. The payments from Associates to Foreman, *supra*, are to be "deemed satisfied" to the extent of any amounts received by Foreman as his share of his own promotional receipts; in effect, the payments from Associates to Foreman represent mere advances which are to be repaid to Associates out of Foreman's earnings.

Foreman gained the world heavyweight title in January, 1973, by knocking out Joe Frazier in the second round of their bout in Kingston, Jamaica; the fight receipts were placed in escrow and then distributed as provided in the 1972 Agreement. On July 18, 1973, Foreman and Sadler filed their complaint in No. C–73–1230 RFP; however, that complaint was not served until August 23, 1973, at a hearing on the motion for a preliminary injunction filed by Associates pursuant to its complaint in No. C–73–1483 RFP. On August 28, 1973, a stipulated injunction was entered into whereby Foreman, Sadler, Development, their officers and agents, and persons acting in concert with them, were preliminarily enjoined from disposing of any and all amounts received directly or indirectly by Foreman or Sadler from Foreman's title bout with Joe "King" Roman in Tokyo on September 1, 1973. The proceeds directly payable to Foreman ($250,000), less Japanese withholding tax, were placed in escrow pending resolution of the litigation; however,

Associates contends that approximately $350,000 paid to Leroy Jackson in connection with the Roman fight was money indirectly paid to Foreman and therefore covered by the terms of the injunction. None of the money paid to Jackson has been placed in escrow, and in fact its precise location seems uncertain; accordingly, Associates has asked the court to hold the various defendants in contempt of the stipulated injunction by virtue of their alleged efforts to divert funds from Foreman.

Foreman has recently contracted for a defense of his title against Ken Norton on March 26, 1974; fearing a repetition of the difficulties encountered in tracing the proceeds of the Roman fight, Associates has requested a further injunction restraining defendants from disposing of any of the proceeds of the Norton fight pending the outcome of this litigation.

We will turn first to a consideration of the motions for summary judgment by Foreman and Sadler, and then to a consideration of the various motions raised by Associates.

## II. SUMMARY JUDGMENT

### A. *Applicable Law*

Paragraph 15 of the 1972 Agreement provides that the Agreement and obligations thereunder shall be construed in accordance with California law. While such a stipulation may bind the parties *inter se*, it cannot, of course, force a court to apply California law under circumstances where such application would otherwise be inappropriate. Nevertheless, in light of the facts that the Agreement was negotiated and signed in California, that Foreman resides in California, and that many of the principal obligations of the Agreement are to be performed in California (e.g., payments of money), this appears to be a particularly appropriate case for the application of California law.

Regulation of professional boxing in California falls within the province of the State Athletic Commission, estab-

lished by Cal.Bus. & Prof.Code § 18620.[1] The Commission is authorized to promulgate regulations in aid of the exercise of its statutory obligations (§§ 18624, 18682), and these regulations appear in Title 4, Chapter 2 of the Cal. Administrative Code.

The Commission is granted sole authority and jurisdiction over the licensing of participants in boxing contests (§ 18672), a power which is set out at length in § 18674 as follows:

> The commission may license professional boxers . . . and . . . managers, trainers, and seconds of each. .
>
> No such person shall participate in any boxing contest . . . or serve in the capacity of a . . . manager, trainer, or second, unless he has been licensed for that purpose by the commission.
>
> For the purpose of this section, the term "manager" means any person who does any of the following:
>
> (a) By contract, agreement, or other arrangement with any person undertakes or has undertaken to represent in any way the interest of any professional boxer in procuring or with respect to the arrangement or conduct of, any professional boxing contest in which such boxer is to participate as a contestant . . .
>
> (b) Directs or controls the professional boxing activities of any professional boxer.
>
> (c) Receives or is entitled to receive more than 10 percent of the gross purse of any professional boxer for any services relating to such boxer's participation in a professional boxing contest. . . .

Failure to obtain a license, when one is required, is a misdemeanor. § 16240.

In addition, the Commission has issued the following regulations, appearing in 4 Cal.Admin.Code:

> § 256. Form of Contract. Contracts between boxers and managers . . . shall be executed on printed forms approved by the commission. The commission may approve a contract not on its printed form if entered into in another jurisdiction by non-residents of this state.
>
> § 257. Provisions of Contract. The original of all contracts entered into between managers and boxers must be placed on file with the commission at the time it is approved pursuant to Rule 258 . . . . . No manager or group of managers shall be allowed to participate in more than 33⅓ percent of the gross ring earnings of the boxer . . . . .
>
> § 258. Execution of Contract. A contract is not valid between manager and boxer unless both parties appear at the same time before the commission or a commission representative and receives [sic] approval, unless otherwise directed by the commission. Except as hereinafter provided, no contract shall be approved between a manager and a boxer for a period exceeding three years.
>
> [The exception to the latter clause permits provisions granting the manager an option to renew for a period not exceeding three years.]

These constitute the principal statutes and regulations relevant to the issues raised by the motion for summary judgment; it remains only to apply them to the facts of this case.

### B.  *Discussion*

Obviously the threshold determination which must be made is whether Associates falls within the applicable definition of "manager," since there is no other basis for bringing Associates within the jurisdiction of the California State Athletic Commission.  As we have seen,

---

1. Unless otherwise noted, all subsequent statutory references are to the Business & Professions Code.

the term "manager" is statutorily defined in § 18674; thus we need consider only whether Associates falls within any of the statutory categories.

Section 18674(b) characterizes as a manager any person who "directs or controls the professional boxing activities of any professional boxer." As we have seen, paragraph 1(b) of the 1972 Agreement requires that all financial arrangements for Foreman's fights be approved by Associates, subject to the qualification that this approval not be unreasonably withheld. Even with this qualification of reasonableness, the approval power is a significant one; a partner in Associates has characterized this power as the right "to utilize its judicious and reasonable withholding of approval to obtain better and more favorable financial terms for such fight contracts" (Affidavit of David L. Miller in Support of Motions for Preliminary Injunctions, etc., p. 8, lines 27–29), and in their legal arguments Associates recognize their approval power as a "substantive right to evaluate the offer on the merits, grant approval if warranted, or deny approval if such denial is reasonably called for under the particular circumstances." (Memorandum of Points and Authorities in Support of Motions for Preliminary Injunctions, etc., page 33, lines 7–9). This approval is evidently not envisioned as a technical formality or a perfunctory matter; and the very real element of control which Associates derives from its approval right is in no way lessened by the prospect that the interests of Associates and Foreman will normally coincide, since there are situations in which, as counsel for Foreman has suggested, these interests may diverge, or in which the parties may differ in their perceptions of their short-term and long-term interests. The fact that disputes will be submitted to arbitration is likewise immaterial here, since the position of Associates may well be upheld by the arbitrator, and a control approved as "reasonable" is not thereby rendered any less of a restraint.

Another potential source of control over Foreman's boxing activities is found in paragraph 5 of the 1972 Agreement, which gives Associates a like power of approval or disapproval over Foreman's choice of a successor to Sadler, in the event that selection of a successor becomes necessary. Certainly the selection of a manager and trainer is one of a boxer's most important decisions.

Associates has volunteered, in its points and authorities, to waive the approval provisions of Paragraph 1(b); such a waiver is provided for in Paragraph 10 of the 1972 Agreement, which permits either party to waive the right to performance owed to it in the event that such performance is found to violate the laws of any jurisdiction. Such a waiver will not help Associates here, however, since we find below that the payment provisions of the Agreement are also sufficient to confer "manager" status upon Associates.

Section 18674(c) characterizes as a manager any person who is entitled to receive more than 10 percent of the gross purse of any professional boxer *for services relating to such boxer's participation in a professional boxing contest.* Associates quite rightly points out that one purpose of the 1972 Agreement was to eliminate Associates from the role of providing services in the negotiation and promotion of fights and various related rights; however, the Agreement does obligate Associates to advance money for training expenses and for travel expenses incident to training and boxing, and to guarantee Foreman $25,000 per year as compensation for his services as an employee of Associates. This court finds no reason why such payments should not, in keeping with the intent and purpose of the statute, be considered services relating to Foreman's boxing activities.

This interpretation derives considerable support and force from the history of state regulation of professional boxing in California and elsewhere. For many years, boxing was plagued by revelations of sordid abuses. Managers

were accused of living off the earnings of impoverished fighters who received virtually nothing in return, having bartered away the right to their future earnings in exchange for the most meager present returns; close underworld connections often resulted in defrauding the public through the "fixing" of fights. *See, e. g.*, Report of the Governor's Committee on the Study of Boxing and Wrestling in California (1956); 6 Op.Atty.Gen. 122 (1945). These abuses ultimately prompted the extensive statutory and regulatory framework administered by the State Athletic Commission, a framework which has been described by the California Supreme Court as evincing "an unusually strong policy" of public regulation, one of whose primary goals is "to provide safeguards for the protection of persons engaging in the activity." Hudson v. Craft, 33 Cal.2d 654, 657–59, 204 P.2d 14 (1949). The statutes and regulations indicate a clear purpose to safeguard boxers against the temptation to mortgage their futures in exchange for relatively meager present consideration;[2] in light of that purpose, it is appropriate and even necessary to interpret advance payments (such as those made to Foreman under the 1972 Agreement) as falling within the scope of the "services" which trigger the licensing requirement and other statutory protections.

■ In at least two respects therefore, this court finds that Associates falls within the statutory definition of "manager," and is hence subject to the jurisdiction of the State Athletic Commission. Once this determination is made, it is evident that the 1972 Agreement fails in numerous respects to comply with the applicable regulations governing boxer-manager contracts. The most significant violation was the failure of the parties to appear together before the Commission and secure its approval of the Agreement as required by 4 Cal.

Admin.Code § 258; in addition, the Agreement was not filed with the Commission (§ 257), was not on a proper printed form or other approved form (§ 256), and substantially exceeded the maximum term of three years (§ 258).

■ These violations necessarily render the Agreement invalid and unenforceable, both by the express terms of· the Commission's own regulations (§ 258: "A contract is not valid between manager and boxer unless . . . .") and by the recognized principle that a contract which violates the law cannot be enforced in an action founded upon the contract. City Lincoln-Mercury Co. v. Lindsay, 52 Cal.2d 267, 274, 339 P.2d 851 (1959); Owen v. Off, 36 Cal.2d 751, 753, 757, 227 P.2d 457 (1951); Loving & Evans v. Blick, 33 Cal.2d 603, 607–08, 204 P.2d 23 (1949); Wood v. Krepps, 168 Cal. 382, 386, 143 P. 691 (1914); California Chicks, Inc. v. Viebrock, 254 Cal. App.2d 638, 62 Cal.Rptr. 269 (1967); Buchwald v. Superior Court, 254 Cal. App.2d 347, 62 Cal.Rptr. 364 (1967). No matter what their intentions or understandings may have been, the parties are not at liberty to waive or ignore the requirements of the law, particularly where the law in question is founded upon an "unusually strong" public regulatory policy designed in part to protect both the general public and some of the parties themselves. *See* Hudson v. Craft, *supra*, 33 Cal.2d at 657–59, 204 P.2d 1.

It is, of course, true that there are no reported California decisions interpreting many of the statutes and regulations discussed above; however, both parties have directed the court's attention to a series of New York decisions applying the very similar regulatory framework in force in that state.

Professional boxing in New York is governed by that state's State Athletic Commission, which is given licensing authority over "professional boxers, . . . their managers, trainers,

---

2. Cf. P. Simon, "The Boxer," (Columbia 1969, BMI): "I have squandered my resistance/For a pocketful of mumbles,/Such are promises/All lies and jest/Still, a man hears what he wants to hear/And disregards the rest."

[and] seconds"; it is a misdemeanor for a person or corporation falling within these categories to "participate[s] either directly or indirectly in any boxing . . . match" in such a capacity.[3] McKinney's Unconsolidated Laws, §§ 8907, 8933. The Commission is authorized to promulgate appropriate regulations, and has in fact issued rules substantially similar to the California regulations discussed earlier.

The leading New York case arising under these rules involved a boxer-manager contract which violated the Commission's regulations in at least six respects, including: (1) lack of a license by one manager; (2) giving the managers more than $\frac{1}{3}$ of the boxer's earnings; (3) provision for a term in excess of two years; (4) failure of the parties to appear before the Commission and secure its approval; and (5) failure to file a copy of the contract with the Commission. The New York courts held that the contract was illegal and unenforceable, both prospectively and as to acts already performed. Baksi v. Wallman, 271 App.Div. 422, 65 N.Y.S.2d 894 (1946) [aff'g in part and rev'g in part 62 N.Y.S.2d 26 (Sup.Ct.1946)], aff'd 297 N.Y. 456, 74 N.E.2d 172 (1947). This treatment by the New York courts lends considerable support to the interpretation this court has placed upon parallel California regulations, *supra*.

■ Associates argues that the Commission's jurisdiction, by statute, extends only to boxing matches *in California,* and that the Commission's rules are therefore inapplicable here since none of the bouts in question was sited in California. It is true that under § 18670, the Commission's jurisdiction is limited to bouts taking place in California; however, the regulations which the Commission has promulgated in aid of its exercise of that jurisdiction expressly cover *all contracts* between boxers and

managers. There is no provision restricting the coverage of those rules to contracts relating to California boxing matches, and the court is certainly unable to say on this record that the Commission has exceeded its statutory mandate in purporting to regulate all boxer-manager contracts entered into in California.

Associates has further argued that summary judgment on this issue is inappropriate, since there is a factual dispute as to the purpose of the approval provision in the 1972 Agreement (Associates contends that the sole purpose of the approval clause is to assist them in acquiring information concerning Foreman's financial arrangements). As the earlier discussion of this provision indicated, the position of Associates on this issue has fluctuated; on some occasions, as noted, Associates has contended that the approval power is in fact a valuable substantive right going far beyond the mere acquisition of information. Thus, to the extent that there is a factual conflict on this issue, much of the conflict has been generated by Associates itself. Nevertheless, regardless of what evidence might be adduced as to the motive behind the clause, it is clearly within this court's province to find, as a matter of law, that the approval clause on its face vests sufficient power in Associates to trigger the application of the "directs or controls" provision of § 18674(b).

■ Finally, Associates argues that if the 1972 Agreement is invalidated, the court must reinstate the 1971 Agreement which preceded it. However, paragraph 17 of the 1972 Agreement provides that all prior agreements are merged in the 1972 Agreement and shall not survive its execution; furthermore, various documents executed at the time of the 1972 Agreement (including the Releases and the Settlement Agreement) clearly indicate the intention of the par-

---

3. The California licensing section is potentially broader than the New York statute, since it includes not only persons "participating in a boxing match" as a manager but also persons serving in the capacity of a manager, regardless of whether this service could be classified as participation in a particular boxing match.

ties to relinquish all rights and obligations under the 1971 Agreement. Against that background, California law provides no basis for reviving the 1971 Agreement upon a holding that the 1972 Agreement is invalid. Alexander v. Angel, 37 Cal.2d 856, 862, 236 P.2d 561 (1951); Beckwith v. Sheldon, 165 Cal. 319, 323–24, 131 P. 1049 (1913); Producers Fruit Co. v. Goddard, 75 Cal.App. 737, 755–56, 243 P. 686 (1925).

On the basis of the preceding discussion, the court finds that there is no genuine dispute as to any material fact in this action, and that plaintiffs Foreman and Sadler are entitled to summary judgment as a matter of law.

## III. EQUITABLE RELIEF TO ASSOCIATES

██ Part II of this Memorandum and Order discussed at length the reasons for which the 1972 Agreement must be deemed contrary to law and therefore unenforceable. Nevertheless, it is clear that this result threatens to work a substantial injustice upon Associates, which advanced substantial sums of money to Foreman and Sadler in reliance upon the 1971 and 1972 Agreements and which has received relatively little of its anticipated return. This fact is not a sufficient basis for enforcing the agreements themselves, since the private interests of the parties cannot overcome the interest of the state in the enforcement of its laws; however, where the public cannot be protected because portions of a transaction have already taken place, and where one party would be unjustly enriched at the expense of another, the courts have fashioned equitable remedies to mitigate the harshness of this result. Southfield v. Barrett, 13 Cal.App.3d 290, 294, 91 Cal. Rptr. 514, 516 (1970), and cases cited therein.

██ The present case seems a highly appropriate one for the application of this principle. Accordingly, as part of the order granting the motion for summary judgment by Foreman and Sadler, the latter parties will be ordered to reimburse Associates for any money advanced by Associates to Foreman or Sadler under either the 1971 or 1972 Agreements, to the extent that such advances have not already been offset by payments to Associates of its share of the proceeds covered by the 1971 and 1972 Agreements. The parties shall prepare and submit an accounting of these advances and repayments within 30 days of the entry of this order.

## IV. PRELIMINARY INJUNCTION AND CONTEMPT

Summary judgment having been granted to Foreman and Sadler on the grounds that the 1972 Agreement is void and unenforceable, there is no basis for granting a preliminary injunction in either action to compel compliance with the terms of that Agreement. The contempt motion, however, must still be resolved, since the alleged contemptuous acts consisted not of a failure to abide by the 1972 Agreement, but rather of a failure to abide by the terms of the stipulated injunction approved by this court on August 28, 1973.

With respect to the contempt motion, this court is of the opinion that oral argument would be useful in clarifying the precise positions and contentions of the parties. Accordingly, a hearing will be held on this motion alone on the date set forth below.

## V. ORDER

In accordance with the preceding Memorandum,

It is hereby ordered that the motions for summary judgment by Foreman and Sadler are granted, and the 1972 Agreement is declared to be contrary to law and therefore unenforceable;

It is further ordered that Foreman and Sadler and their related entities shall reimburse Associates for any payments made by Associates to Foreman and Sadler under subparagraphs 3(a)–(c) of the 1972 Agreement or under their counterparts in the 1971 Agreement, except to the extent that such pay-

ments by Associates have been offset by amounts received by Associates as its share of Foreman's promotional receipts or as funds retained under subparagraph 3(e) of the 1972 Agreement or its counterpart in the 1971 Agreement;

It is further ordered that the motion of Associates for a preliminary injunction is denied;

It is further ordered that the motion of Associates to amend the complaint in No. C–73–1483 RFP is denied; and

It is further ordered that a hearing is hereby set for Thursday, April 4, 1974, at 9:30 a. m., in regard to the motion of Associates to have certain defendants held in contempt.