[No. B188554. Second Dist., Div. Two. Mar. 19, 2007.]

SHARYN BERG, Plaintiff and Respondent, v.
MESHIEL COOPER TRAYLOR et al., Defendants and Appellants.

**COUNSEL**

Law Offices of Robert N. Pafundi, Robert N. Pafundi and Darryl O. Dickey for Defendants and Appellants.

Duncan Crabtree-Ireland and Russell Naymark for Screen Actors Guild, Inc., as Amicus Curiae on behalf of Defendants and Appellants.

Kane Law Firm, Brad S. Kane and Roger L. Scott for Plaintiff and Respondent.

**OPINION**

**DOI TODD, J.**—Appellants Meshiel Cooper Traylor (Meshiel) and her minor son Craig Lamar Traylor (Craig) appeal the judgment confirming an arbitration award in favor of Craig's former personal manager, respondent Sharyn Berg (Berg), for unpaid commissions under a contract between Berg, Meshiel and Craig and unrepaid loans from Berg.[1] Because we find that Craig had the statutory right as a minor to disaffirm both the original contract and the arbitration award, we reverse the judgment against Craig. We affirm the judgment against Meshiel.

<h2 align="center">FACTUAL AND PROCEDURAL BACKGROUND[2]</h2>

*The Agreement*

On January 18, 1999, Berg entered into a two-page "Artist's Manager's Agreement" (agreement) with Meshiel and Craig, who was then 10 years old. Meshiel signed the agreement and wrote Craig's name on the signature page where he was designated "Artist." Craig did not sign the agreement. Pursuant

---

[1] We granted the application of Screen Actors Guild, Inc. (SAG), to file a brief as amicus curiae in support of appellants.

[2] Pursuant to California Rules of Court, rule 8.204(a)(1)(C) (formerly rule 14(a)(1)(C)), Berg has filed separate motions to strike those portions of appellants' opening and reply briefs and SAG's amicus curiae brief that are unsupported by reference to the record. To the extent the briefs contain references to facts that are unsupported by appropriate citations to the record, we have ignored them. (E.g., *Colt v. Freedom Communications, Inc.* (2003) 109 Cal.App.4th 1551, 1560–1561 [1 Cal.Rptr.3d 245].)

to the agreement, Berg was to act as Craig's exclusive personal manager in exchange for a commission of 15 percent of all gross monies or other consideration paid to him as an artist during the three-year term of the agreement, as well as income from merchandising or promotional efforts or offers of employment made during the term of the agreement, regardless of when Craig received such monies. The agreement expressly provided that any action Craig "may take in the future pertaining to disaffirmance of this agreement, whether successful or not," would not affect Meshiel's liability for any commissions due Berg. The agreement also provided that any disputes concerning payment or interpretation of the agreement would be determined by arbitration in accordance with the rules of Judicial Arbitration and Mediation Services, Inc. (JAMS).

*Termination of the Agreement*

On or about June 13, 2001, Craig obtained a recurring acting role on the Fox Television Network show *Malcolm in the Middle* (show). On September 11, 2001, four months prior to the expiration of the agreement, Meshiel sent a certified letter to Berg stating that while she and Craig appreciated her advice and guidance, they no longer needed her management services and could no longer afford to pay Berg her 15 percent commission because they owed a "huge amount" of taxes. On September 28, 2001, Berg responded, informing appellants that they were in breach of the agreement.

*The Lawsuit*

In 2004, Berg filed suit against Meshiel and Craig for breach of the agreement, breach of the implied covenant of good faith and fair dealing, breach of an oral loan agreement, conversion and declaratory relief. In July 2004, the law firm of White O'Connor Curry & Avanzado represented Meshiel and Craig when the parties stipulated to submit the matter to binding arbitration before JAMS. But in November 2004, the trial court granted that firm's motion to withdraw due to appellants' refusal to pay legal fees or communicate with the firm.

*The Arbitration*

The arbitration hearing was originally scheduled for December 7, 2004. In order to accommodate Meshiel's hospitalization for the premature delivery of her third child and to give appellants time to find new counsel, JAMS continued the hearing to February 7, 2005. In the meantime, appellants' second counsel, the law firm of Cohen & Gardner, represented appellants in unsuccessful settlement negotiations.

The arbitration hearing commenced on February 7, 2005. Because appellants had failed to pay their share of the arbitration fees, Berg did not anticipate their appearance and did not retain a court reporter. Though Meshiel and Craig's counsel failed to appear at the hearing, Meshiel personally appeared with Craig's talent agent, Steven Rice. Craig did not appear. According to Meshiel, the arbitrator denied her request for a two-week continuance. The arbitrator permitted Meshiel to use Rice's assistance and advice in presenting her case. Rice asserted that the agreement was invalid because Craig was a minor at the time it was executed and there had been no court approval of the agreement.

*The Arbitration Award*

On February 11, 2005, the arbitrator issued his award, which was served on the parties on February 14, 2005. Noting that Craig had not appeared at the hearing "despite personal service of summons and notice from JAMS," the arbitrator stated that the award was "issued against him through prove-up and default as provided for in the JAMS Rules" incorporated by reference.[3] After briefly summarizing the testimonial and documentary evidence presented, the arbitrator found that Berg had proven her case by a preponderance of the evidence and reiterated that "Craig did not appear at the arbitration and the award of the undersigned is made on the basis of the evidence produced during the prove-up and is deemed a default judgment." The arbitrator awarded Berg commissions and interest of $154,714.15, repayment of personal loans and interest of $5,094, and attorney fees and costs of $13,762. He also awarded Berg $405,000 "for future earnings projected on a minimum of 6 years for national syndication earnings," and stated that this part of the award would "vest and become final, as monies earned after February 7, 2005, become due and payable." On February 20, 2005, the arbitrator served a clarification of the award, stating that "all monies earned by Craig Traylor, pursuant to the contract with Ms. Berg, are paid directly to Ms. Berg. . . . After deduction of fees and commissions, etc., the balance of the funds shall be forwarded to the client."

*Stipulated Order*

Following issuance of the arbitration award, appellants hired their third counsel, the law firm of White Bordy & Levey. The parties then entered into

---

[3] Former rule 22(j) of the JAMS Comprehensive Arbitration Rules & Procedures provided in pertinent part: "The Arbitrator may proceed with the Hearing in the absence of a Party who, after receiving notice of the Hearing pursuant to Rule 19, fails to attend. The Arbitrator may not render an Award solely on the basis of the default or absence of the Party, but shall require any Party seeking relief to submit such evidence as the Arbitrator may require for the rendering of an Award."

a stipulated order signed by the court in March 2005, which contained the following provisions: (1) Appellants would pay Berg $50,000 plus 50 percent of compensation earned by Craig on the show until the award was satisfied and thereafter 15 percent of all future compensation related to the show; (2) the award of unpaid commissions could not be reduced below $50,000 and the award of attorney fees and costs could not be modified; (3) appellants could only seek an adjustment of the amount of the award if they disclosed all of Craig's earnings from the show with verified declarations; and (4) the arbitration award would be treated as final for all purposes until the parties agreed on any correction to the award or the arbitrator recalculated the commissions and interest due. Pursuant to the stipulated order, appellants' counsel directed Fox Television Network to pay Berg $50,000, and Meshiel signed an "Authorization Re: One-Time Payment" to this effect on behalf of Craig as his "legal guardian."

*Petitions to Confirm and Vacate the Arbitration Award*

After appellants' third counsel filed a motion to withdraw in June 2005 on the grounds that appellants refused to follow legal advice, pay legal fees or communicate with them, Meshiel and her counsel filed a substitution of attorney on July 7, 2005, indicating that Meshiel was representing herself. The substitution of attorney did not address Craig's representation.

On July 8, 2005, Berg served a petition to confirm the arbitration award, which was filed on July 12, 2005. The petition sought confirmation of the award and a judgment entered thereon, together with a "permanent injunction (i) prohibiting Defendants from accepting compensation for Malcolm in the Middle and (ii) requiring Defendants to direct all Malcolm in the Middle payors to pay all compensation directly into Berg's Counsel's Client Trust Account for distribution to Defendants after deduction of monies owed to Berg."

On August 8, 2005, the Law Offices of Robert N. Pafundi substituted in as appellants' fourth counsel. The same day, appellants filed a "Notice of Disaffirmance of Arbitration Award by Minor," which stated that in addition to his disaffirmance of the agreement on September 11, 2001, Craig was also disaffirming the arbitration award and all other proceedings and orders arising out of the parties' dispute, including the stipulation to submit the action to binding arbitration and the March 2005 stipulated order following the arbitration. Also on that day, appellants filed a "Notice of Intention to File Documents in Opposition to Petition to Confirm Arbitration Award and to File Petition to Vacate Arbitration Award."

On August 18, 2005, appellants filed a petition/response seeking to vacate the arbitration award. The petition to vacate was based primarily on the grounds that Craig had exercised his statutory right to disaffirm both the original agreement with Berg and the arbitration award and that Berg was illegally practicing as an unlicensed talent agent. Following a hearing, the trial court took the matter under submission and the next day issued an order denying the petition to vacate the arbitration award as untimely and granting Berg's petition to confirm the award. Thereafter, the trial court entered a judgment in favor of Berg consistent with the arbitrator's award.

Appellants then filed a motion to vacate the judgment pursuant to Code of Civil Procedure section 473. While the motion was pending, appellants filed a notice of appeal from the judgment. In a January 2006 order, the trial court determined that it had no jurisdiction to rule on the matter in light of the appeal and ordered the motion off calendar.

## DISCUSSION

■ Simply stated, one who provides a minor with goods and services does so at her own risk. (*Goldberg v. Superior Court* (1994) 23 Cal.App.4th 1378, 1382–1383 [28 Cal.Rptr.2d 613].) The agreement here expressly contemplated this risk, requiring that Meshiel remain obligated for commissions due under the agreement regardless of whether Craig disaffirmed the agreement. Thus, we have no difficulty in reaching the conclusion that Craig is permitted to and did disaffirm the agreement and any obligations stemming therefrom, while Meshiel remains liable under the agreement and resulting judgment. Where our difficulty lies is in understanding how counsel, the arbitrator and the trial court repeatedly and systematically ignored Craig's interests in this matter. From the time Meshiel signed the agreement, her interests were not aligned with Craig's. That no one—counsel, the arbitrator or the trial court—recognized this conflict and sought appointment of a guardian ad litem for Craig is nothing short of stunning. ■ It is the court's responsibility to protect the rights of a minor who is a litigant in court. (*Williams v. Superior Court* (2007) 147 Cal.App.4th 36, 49 [54 Cal.Rptr.3d 13].)

### I. *Standard of Review.*

Our review of an arbitrator's award is generally limited. In *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 981–982 [12 Cal.Rptr.3d 287, 88 P.3d 24], the Supreme Court stated: "When parties choose to forgo the traditional court system and arbitrate their claims, it is assumed they wish to have a final and

conclusive resolution of their dispute. The Legislature has recognized this underlying assumption of finality and has, by statute, limited the grounds for judicial review of an arbitrator's award. (Code Civ. Proc., § 1286.2.) Consistent with this legislative intent, we recognized the general rule that 'an arbitrator's decision cannot be reviewed for errors of fact or law.' (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*).) We explained that because the Legislature has provided certain statutory grounds to overturn or modify an arbitrator's decision, courts should not subject such decisions to standard judicial review. (*Id.* at pp. 26, 27–28.) In addition, however, to the statutory grounds for vacating an arbitrator's award, we explained in *Moncharsh* 'that there may be some limited and exceptional circumstances justifying judicial review of an arbitrator's decision . . . . Such cases would include those in which granting finality to an arbitrator's decision would be inconsistent with the protection of a party's *statutory rights*.' (*Id.* at p. 32, italics added.)" Although appellants cite neither *Aguilar* nor *Moncharsh v. Heily & Blase, supra*, 3 Cal.4th 1, this exception appears to be the primary basis on which appellants rely in seeking judicial relief from the arbitrator's award.

## II.   *The Judgment Is Reversed As to the Minor.*

The trial court denied appellants' petition to vacate the arbitration award on the ground that it was untimely. Code of Civil Procedure section 1288 provides that a petition to vacate or correct an arbitration award must be served and filed no later than 100 days after the date of service of a signed copy of the award on the petitioner. Code of Civil Procedure section 1290.6 provides that a response to a petition to confirm an award must be served and filed within 10 days after service of the petition. Here, the arbitration award was served on February 14, 2005, and the clarification of the award was served on February 20, 2005. Berg's petition to confirm the award was served on July 8, 2005, and filed on July 12, 2005. It is undisputed that by the time appellants' fourth and current counsel substituted into the action and thereafter filed a petition to vacate the arbitration award and response to the petition to confirm it on August 18, 2005, both of these statutory deadlines had passed.

Appellants contend that despite the lapse of these deadlines, Craig had the statutory right as a minor to disaffirm both the original agreement with Berg containing the arbitration provision and the arbitration award itself. We agree. Craig's minority status entitled him to disaffirm the agreement and his minority status coupled with the absence of the appointment of guardian ad litem entitled him to disaffirm the arbitration award and judgment even after the statutory deadline for moving to vacate the arbitration award had passed.

## A. *Disaffirmance of the Agreement.*

■ "As a general proposition, parental consent is required for the provision of services to minors for the simple reason that minors may disaffirm their own contracts to acquire such services." (*Ballard v. Anderson* (1971) 4 Cal.3d 873, 878 [95 Cal.Rptr. 1, 484 P.2d 1345].) According to Family Code section 6700, "a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance" provided by Family Code section 6710. In turn, Family Code section 6710 states: "Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards or, in case of the minor's death within that period, by the minor's heirs or personal representative." ■ Sound policy considerations support this provision: "The law shields minors from their lack of judgment and experience and under certain conditions vests in them the right to disaffirm their contracts. Although in many instances such disaffirmance may be a hardship upon those who deal with an infant, the right to avoid his contracts is conferred by law upon a minor 'for his protection against his own improvidence and the designs of others.' It is the policy of the law to protect a minor against himself and his indiscretions and immaturity as well as against the machinations of other people and to discourage adults from contracting with an infant. Any loss occasioned by the disaffirmance of a minor's contract might have been avoided by declining to enter into the contract." (*Niemann v. Deverich* (1950) 98 Cal.App.2d 787, 793 [221 P.2d 178]; accord, *Burnand v. Irigoyen* (1947) 30 Cal.2d 861, 866 [186 P.2d 417].)

Berg offers two reasons why the plain language of Family Code section 6710 is inapplicable, neither of which we find persuasive. First, she argues that a minor may not disaffirm an agreement signed by a parent. She relies on two cases to support her position, both of which are inapposite because they address discrete public policy concerns not at issue here. In *Doyle v. Giuliucci* (1965) 62 Cal.2d 606 [43 Cal.Rptr. 697, 401 P.2d 1], the court rejected a minor's attempt to disaffirm a health care contract containing an arbitration provision signed by the minor's father. The court explained that a minor's statutory power to disaffirm a contract "does not apply to contracts between adults and is therefore not controlling on the question of a parent's power to bind his child to arbitrate by entering into a contract of which the child is a third party beneficiary." (*Id.* at p. 609.) The court found "compelling reasons" for recognizing that "the power to enter into a contract for medical care that binds the child to arbitrate any dispute arising thereunder is implicit in a parent's right and duty to provide for the care of his child." (*Id.* at p. 610; see also *Pietrelli v. Peacock* (1993) 13 Cal.App.4th 943, 947 [16 Cal.Rptr.2d 688] [a parent's power to bind a minor child to arbitration of claims arising from

the minor's health care contract is implied from the parent's duties and rights as the child's guardian].) Because it was unlikely that medical groups would contract directly with minors who could disaffirm their own contracts to pay for medical services, minors could therefore only be assured of the benefits of a group medical service if their parents contracted on their behalf. (*Ibid.*) Moreover, the arbitration provision did not unreasonably restrict a minor's rights, "for it does no more than specify a forum for the settlement of disputes." (*Doyle v. Giuliucci, supra*, at p. 610.)

Here, in contrast, Craig was not a third party beneficiary of the agreement signed by his mother, but a principal. Moreover, there are no compelling reasons justifying binding Craig to the agreement. An agreement for personal management services does not implicate a parent's fundamental duty to provide for the care and health of a child. Further, because there is a statutory procedure governing contracts in which minors agree to render artistic or creative services, there is no danger that talent managers will decline to contract with minors absent their parents contracting on their behalf. (See Fam. Code, §§ 6750, 6751, subd. (a).)[4] Finally, the agreement here did not merely require Craig to arbitrate his disputes, but created significant obligations on his part, notably, the payment of substantial monies to Berg.

In the other case relied on by Berg, *Hohe v. San Diego Unified Sch. Dist.* (1990) 224 Cal.App.3d 1559 [274 Cal.Rptr. 647], the court rejected a minor's attempt to disaffirm a liability release signed by her father relating to the minor's participation in a school program. Relying on *Doyle*, the *Hohe* court reasoned that a parent may contract on behalf of his or her children and that former Civil Code section 35 (now Fam. Code, § 6710) was not intended to affect contracts entered into by adults on behalf of their children. (*Hohe v. San Diego Unified Sch. Dist., supra*, at p. 1565.) It has become "well established that a parent may execute a release on behalf of his or her child." (*Aaris v. Las Virgenes Unified School Dist.* (1998) 64 Cal.App.4th 1112, 1120 [75 Cal.Rptr.2d 801].) Here, in contrast, Meshiel did not sign an agreement on Craig's behalf that merely obligated him to release another party from liability. Thus, the state's public policy to enforce releases signed by parents on behalf of their children is not implicated. There is no public policy barring a minor from disaffirming a contract that imposes significant affirmative responsibilities on him.

---

[4] While we recognize that the agreement here does not fall within the parameters of the contracts specified by Family Code section 6750, subdivision (a), which generally involve the employment of a minor to render artistic services, there was evidence below that parties to agreements for the provision of personal management services in the entertainment industry routinely seek court approval for the protection of all involved.

■ Second, Berg argues that Craig cannot disaffirm the agreement because it was for his and his family's necessities. Family Code section 6712 provides that a valid contract cannot be disaffirmed by a minor if all of the following requirements are met: the contract is to pay the reasonable value of things necessary for the support of the minor or the minor's family, the things have actually been furnished to the minor or the minor's family, and the contract is entered into by the minor when not under the care of a parent or guardian able to provide for the minor or the minor's family. These requirements are not met here. The agreement was not a contract to pay for the necessities of life for Craig or his family. While such necessities have been held to include payment for lodging (*Burnand v. Irigoyen, supra*, 30 Cal.2d at pp. 867–868) and even payment of attorney fees (*Leonard v. Alexander* (1942) 50 Cal.App.2d 385, 387–389 [122 P.2d 984]), we cannot conclude that a contract to secure personal management services for the purpose of advancing Craig's acting career constitutes payment for the type of necessity contemplated by Family Code section 6712. Nor is there any evidence that Meshiel was unable to provide for the family in 1999 at the time of the agreement. As such, Family Code section 6712 does not bar the minor's disaffirmance of the contract.

■ No specific language is required to communicate an intent to disaffirm. "A contract (or conveyance) of a minor may be avoided by any act or declaration disclosing an unequivocal intent to repudiate its binding force and effect." (*Spencer v. Collins* (1909) 156 Cal. 298, 303 [104 P. 320].) Express notice to the other party is unnecessary. (*Celli v. Sports Car Club of America, Inc.* (1972) 29 Cal.App.3d 511, 517 [105 Cal.Rptr. 904].) We find that the "Notice of Disaffirmance of Arbitration Award by Minor" filed on August 8, 2005, was sufficient to constitute a disaffirmance of the agreement by Craig. Although the notice assumed that Meshiel's September 11, 2001 letter to Berg stating that Meshiel and Craig were no longer going to honor their obligations under the agreement acted as a prior disaffirmance of the agreement, the notice further stated that Craig "disaffirms all other documents filed under his name or affecting him as a minor in this litigation . . . ." This language adequately conveyed Craig's intent to repudiate the binding force and effect of the agreement. (Cf. *Celli v. Sports Car Club of America, Inc., supra*, at p. 517 [filing of an action is sufficient to disaffirm a contract]; *Pereira v. Toscano* (1927) 84 Cal.App. 526, 531 [258 P. 429] [oral notice is sufficient to disaffirm a contract].)

■ We find that Craig was entitled to and did disaffirm the agreement which, among other things, required him to arbitrate his disputes with Berg. On this basis alone, therefore, the judgment confirming the arbitration award must be reversed.

## B.  *Disaffirmance of the Arbitration Award.*

Although it is unnecessary to our disposition, we further find that Craig was entitled to and did disaffirm the arbitration award because he was never represented by an appointed guardian ad litem.

■ Code of Civil Procedure section 372, subdivision (a) requires that a minor who is a party to a lawsuit "shall appear either by a guardian or conservator of the estate or by a guardian ad litem appointed by the court in which the action or proceeding is pending, or by a judge thereof, in each case."  ■ As aptly explained in *Keane v. Penha* (1946) 76 Cal.App.2d 693, 696 [173 P.2d 835]: "It is the general rule that an omission to cause the appointment of a guardian if there be none is fatal to all subsequent steps taken in the action. . . . Unless a minor is 'duly represented as provided by law' at the time a judgment is entered against him his right to disaffirm such judgment 'continues until barred by laches after the minor has attained the age of majority.' [Citation.] Such a judgment is voidable and may be disaffirmed. [Citation.] The right of disaffirmance by a minor of a judgment rendered voidable by the fact that he was not represented by a guardian in the action is absolute [citation], and such right continues throughout his minority. [Citations.]" (Accord, *Field v. Hughes* (1933) 131 Cal.App. 144, 146–147 [20 P.2d 990] ["A judgment procured against a minor without the appointment of a guardian as provided by statute may be disaffirmed by him"].)

Berg contends that no appointment of a guardian ad litem was necessary because Meshiel functioned as Craig's "guardian." She relies on a declaration submitted in support of appellants' petition to vacate the arbitration award in which Meshiel averred that she was "the natural mother and guardian of Craig." Meshiel's self-characterization in no way obviated the need for the appointment of a guardian ad litem to represent Craig's interests. Code of Civil Procedure section 372, subdivision (a) provides that "[a] guardian ad litem may be appointed in any case when it is deemed by the court in which the action or proceeding is prosecuted, or by a judge thereof, expedient to appoint a guardian ad litem to represent the minor, . . . notwithstanding that the person may have a guardian or conservator of the estate and may have appeared by the guardian or conservator of the estate."

■ Such an appointment was required here due to the inherent conflict of interest between Craig and Meshiel. The agreement expressly provided that even if Craig disaffirmed, Meshiel would remain liable for commissions due Berg. It was therefore not in Meshiel's interest to have Craig disaffirm the agreement because Berg would look to her, personally, for satisfaction of

Craig's obligations under the agreement. As such, Meshiel's interests in the lawsuit were in direct conflict with those of her son. (See *Estate of Lacy* (1975) 54 Cal.App.3d 172, 185 [126 Cal.Rptr. 432] [where litigation involved conflicting interests of a minor and his parent in a testamentary trust, a guardian ad litem other than the parent should have been appointed to represent the minor's interests]; *Loock v. Pioneer Title Ins. etc. Co.* (1935) 4 Cal.App.2d 245, 249 [40 P.2d 526] [where mother's personal interests in litigation differed from minor's, proper to appoint a guardian ad litem to protect the minor's interests].) It is clear that Meshiel, as Craig's guardian, could not adequately represent his interests. " 'When there is a potential conflict between a perceived parental responsibility and an obligation to assist the court in achieving a just and speedy determination of the action,' a court has the right to select a guardian ad litem who is not a parent if that guardian would best protect the child's interests. [Citation.]" (*Williams v. Superior Court, supra*, 147 Cal.App.4th at p. 49.) As such, it was necessary for Craig to have a guardian ad litem appointed to separately represent his interest with respect to Berg's claims.

It is undisputed that the trial court never appointed a guardian ad litem for Craig. We find it irrelevant that Craig was represented on and off throughout the litigation by counsel also representing his mother. There is no evidence that counsel treated his interests separately from his mother's. Indeed, at the most crucial juncture of the proceedings—the arbitration hearing—no attorney appeared to represent Craig and the matter was treated as a default prove-up hearing. Because no guardian ad litem was appointed for Craig, we conclude that he was entitled to disaffirm the arbitration award, the stipulated orders pertaining to the arbitration award and the subsequent judgment rendered against him.

III. *The Judgment Is Affirmed As to the Mother.*

Appellants do not generally distinguish their arguments between mother and son, apparently assuming that if Craig disaffirms the agreement and judgment, Meshiel would be permitted to escape liability as well. But a disaffirmance of an agreement by a minor does not operate to terminate the contractual obligations of the parent who signed the agreement. (*Raden v. Laurie* (1953) 120 Cal.App.2d 778, 783 [262 P.2d 61].) The agreement Meshiel signed provided that Craig's disaffirmance would not serve to void or avoid Meshiel's obligations under the agreement and that Meshiel remained liable for commissions due Berg regardless of Craig's disaffirmance. Accordingly, we find no basis for Meshiel to avoid her independent obligations under the agreement.

Appellants' remaining challenges to the arbitration award do not mandate reversal of the judgment as to Meshiel. They argue that the award must be vacated because the arbitrator refused to postpone the hearing despite sufficient cause being shown. (Code Civ. Proc., § 1286.2, subd. (a)(5).) They also raise the defense that the agreement was unenforceable because Berg was allegedly performing the acts of an unlicensed agent in violation of the Talent Agencies Act (Lab. Code, § 1700 et seq.) (the Act), an issue not raised at the arbitration.[5] But Meshiel fails to explain how these issues can be considered after she stipulated to the finality of the arbitration award. (See *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 400 [87 Cal.Rptr.2d 453, 981 P.2d 79] [the rule that a stipulated judgment is not appealable is based upon " 'the theory that by consenting to the judgment or order the party expressly waives all objection to it, and cannot be allowed afterwards, on appeal, to question its propriety, because by consenting to it he has abandoned all opposition or exception to it' "].) More importantly, her failure to file a timely petition to vacate the arbitration award bars her from challenging the judgment confirming the award on appeal. (*Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 658–660 [98 Cal.Rptr.2d 378]; *Knass v. Blue Cross of California* (1991) 228 Cal.App.3d 390, 393–396 [279 Cal.Rptr. 124].)

While we conclude that Craig nevertheless had the right to disaffirm the arbitration award and the subsequent judgment as an unrepresented minor, Meshiel has not provided us with any authority that would permit her now to challenge the award against her. Accordingly, the judgment confirming the arbitration award is affirmed as to Meshiel.

---

[5] In its amicus curiae brief, SAG raises for the first time the issue that this defense must be resolved by the California Labor Commissioner, who has exclusive authority to hear disputes arising under the Act. (*Styne v. Stevens* (2001) 26 Cal.4th 42, 55–56 [109 Cal.Rptr.2d 14, 26 P.3d 343] [whether a contract is void and unenforceable as involving the services of an unlicensed person in violation of the Act "must first be submitted to the Commissioner, and that forum must be exhausted, before the matter can be determined by the superior court"].) Appellants never raised this issue below and we decline to consider it. "California courts refuse to consider arguments raised by amicus curiae when those arguments are not presented in the trial court, and are not urged by the parties on appeal. ' "Amicus curiae must accept the issues made and propositions urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curiae will not be considered [citations]." ' " (*California Assn. for Safety Education v. Brown* (1994) 30 Cal.App.4th 1264, 1275 [36 Cal.Rptr.2d 404]; see also *Mercury Casualty Co. v. Hertz Corp.* (1997) 59 Cal.App.4th 414, 425 [69 Cal.Rptr.2d 9] [" 'As a general rule, issues not raised by the appealing parties may not be considered if raised for the first time by amici curiae' "].)

## DISPOSITION

The judgment is reversed as to Craig and affirmed as to Meshiel. The parties to bear their own costs on appeal.

Boren, P. J., and Chavez, J., concurred.