Filed 2/10/26  Beverly v. Sabo Eventing CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MADISON BEVERLY, a Minor, etc., et al., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SABO EVENTING LLC, <br><br> Defendant and Appellant. | G064913 <br><br> (Super. Ct. No. 30-2023-01338428) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Richard Y. Lee, Judge. Reversed and remanded with directions.

Keffrey Law, Gary A. Wolensky and Derek M. Milosavljevic for Defendant and Appellant.

Fem Law Group and F. Edie Mermelstein; Toor Law and Puneet Kaur Toor for Plaintiff and Respondent.

Plaintiff Madison Beverly, a minor by and through her guardian ad litem Michael Beverly, filed this action against defendant Sabo Eventing LLC dba Newport Mesa Riding Center (Sabo Eventing) seeking damages for injuries she suffered during a horseback riding lesson. Sabo Eventing moved to compel arbitration based on a document entitled "Waiver—Sabo Eventing LLC and Newport Mesa Riding Center" (the Waiver Agreement), which included an arbitration provision and was signed by Madison's mother, Jennifer Beverly, on behalf of herself and Madison.[1] Although the trial court found Sabo Eventing had met its burden of showing the existence of an arbitration agreement that encompasses Madison's claims, the court concluded the arbitration provision was unenforceable because Madison had disaffirmed it under Family Code section 6710.[2] The court therefore denied the motion.

We conclude the trial court erred in finding Madison could disaffirm the arbitration provision signed on her behalf by her mother. Madison also asserts the motion to compel arbitration should have been denied because Sabo Eventing waived its ability to compel arbitration. The trial court did not reach this issue, and we decline to address it in the first instance. We reverse the order denying the motion to compel arbitration and remand the matter to the trial court for further proceedings and with directions to consider and rule on Madison's waiver argument.

---

[1] Because Madison, Michael, and Jennifer share the same last name, we refer to them by their first names for clarity.

[2] All undesignated statutory references are to the Family Code.

2

FACTUAL AND PROCEDURAL BACKGROUND

In August 2023, Madison filed her amended complaint against Sabo Eventing. It alleged Madison was a minor and was filing her amended complaint through her guardian ad litem, Michael. It further alleged that, near the end of a horseback riding lesson on July 6, 2022, Madison was injured while dismounting. According to the pleading, "the stirrup used in her riding lesson had been damaged and was no longer safe for use." The amended complaint alleged Sabo Eventing "was liable in the hiring, retention and lack of supervision of Madison's riding coach, in failing to provide safe equipment, by creating a dangerous condition by replacing the stirrup with a hair tie and finally by failing to move the stirrup out of the way before a child in their care dismounted from a horse." It also alleged Madison's "instructor failed to assist Madison in a safe dismount from the horse, which is gross negligence and recklessness and the cause of the emotional distress and bodily injuries she sustained."

In February 2024, Sabo Eventing moved to compel arbitration and stay the pending court action. Sabo Eventing asserted that Madison's mother, Jennifer, had executed the Waiver Agreement on Madison's behalf, and that it contained an arbitration provision that encompassed the claims asserted by Madison. Sabo Eventing also argued Madison could not disaffirm the Waiver Agreement, including its arbitration provision, given it was signed by her mother on her behalf. Sabo Eventing therefore argued it had met its burden to establish a valid arbitration agreement covering Madison's claims.

In an amended declaration in support of the motion, Lisa Sabo declared, among other things, she is the owner of Sabo Eventing, which "requires a signed waiver . . . on behalf of all riding students prior to

3

engaging in riding lessons."[3] She further declared, "[o]n or about January 7, 2022, Jennifer . . . executed the [a]greement on behalf of herself and her daughter, [p]laintiff Madison," and "[a] true and correct copy of the executed [a]greement [Jennifer] provided to Sabo [Eventing] is attached as Exhibit A."

The Waiver Agreement has 15 numbered paragraphs,[4] including the following arbitration provision: "Any dispute, claim or controversy arising out of or relating to the Agreement or the breach, termination, enforcement,

---

[3] In an August 2024 order, the trial court noted there were two declarations of Lisa Sabo filed on February 8, 2024—one in support of Sabo Eventing's motion to compel arbitration and another in support of its motion for leave to amend its answer—but both declarations were unsigned and undated. The court further noted that neither declaration attached the purported agreement at issue, although both declarations said they did so. Thus, the court found it was "unable to determine whether the [a]greement applies to [Madison's] claims based on the current moving and reply papers," and it continued the hearing. The court ordered Sabo Eventing "to file an amended [d]eclaration of Lisa Sabo and a copy of the [a]greement no later than nine (9) court days before the new hearing date," and it permitted Madison to file objections to the amended declaration. Sabo Eventing filed an amended declaration of Lisa Sabo, which attached the Waiver Agreement as an exhibit.

[4] Among other provisions, the Waiver Agreement stated the following: "The undersigned Owner/Rider/Student/Parent or Guardian shall assume all responsibility and risk arising out of engaging in or participating in equestrian activities at Newport Mesa Riding Center or your local stables, barn or trainer, Brian and Lisa Sabo, Sabo Eventing LLC, Newport Mesa Riding Center, Newport Mesa Pony Club and/or any other facility we are working at. The undersigned Owner/Rider/Student/Parent or Guardian shall hold Brian Sabo, Lisa Sabo, Sabo Eventing LLC their agents, employees, independent contractors and/or their students harmless from all damages or liability for and injury to person, injury to horse, damage to personal property or for wrongful injury or death except to the extent that such damages are caused solely by the gross negligence or willful misconduct of the released parties."

interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in [*sic*] state of California before an arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction."

Paragraph 15 of the Waiver Agreement provided: "By signing this agreement as a parent or legal guardian, I am agreeing to its terms on behalf of myself and my minor child or ward, and I am consenting to the minor child's participation in the activities described in this agreement and in any other activities related thereto, and acknowledging that I understand that any and all risk and liabilities, whether known or unknown, are expressly assumed by me and all claims, whether known or unknown, are expressly waived in advance."[5] Under a space on the Waiver Agreement for "Parent or Guardian's Name," Jennifer's name is listed, her relationship is noted as "mother," and an electronic signature appears. Under a space for "Participant's Name," Maddie Beverly is listed.[6]

In August 2024, Madison filed her opposition to the motion to compel arbitration. Madison argued the arbitration provision cannot be

---

[5] The signature page of the Waiver Agreement also included the following statement: "Parent(s) or court-appointed legal guardian(s) must sign for any participating minor (those under 18 years of age) and agree that they and the minor are subject to all the terms of this document, as set forth above."

[6] Madison does not dispute "Maddie" refers to her.

5

enforced against her because, "[w]hile a purported 'Waiver and Release' may arguably have enforceable components against a minor plaintiff, any arbitration provision contained therein may be severed and disclaimed by the minor."[7] Madison also asserted Sabo Eventing waived its right to compel arbitration. Thereafter, Sabo Eventing filed a reply brief in support of its motion, asserting (among other things) that it had done nothing to waive its right to compel arbitration.

The trial court ruled on the motion in September 2024. The court stated the Waiver Agreement "reflects that it was signed by [Madison's] mother, Jennifer . . . , on January 7, 2022." It found Sabo Eventing had met "its burden to show the existence of an arbitration agreement with the opposing party by a preponderance of the evidence that encompasses [Madison's] action here that asserts a cause of action for negligence based on allegations that [Madison] suffered injuries during a horseback riding lesson. Thus, [Madison's] claim arises out of or relates to the [Waiver Agreement] relating to [Madison's] equestrian activities with [Sabo Eventing]." Nevertheless, relying on section 6710 and *Berg v. Traylor* (2007) 148 Cal.App.4th 809 (*Berg*), the court determined "a minor may disaffirm an arbitration agreement signed by a parent under the circumstances" and concluded Madison had disaffirmed the arbitration agreement by filing her lawsuit in a judicial forum. Thus, the court concluded the arbitration

---

[7] Madison also argued in her opposition that Sabo Eventing failed to include the arbitration agreement as an exhibit with its motion. As noted above, the trial court continued the hearing and ordered Sabo Eventing to file an amended declaration of Lisa Sabo and a copy of the arbitration agreement, which it did.

provision is not enforceable as to Madison and denied the motion. Sabo Eventing appealed.

## DISCUSSION

"In California, the law 'shields minors from their lack of judgment and experience and confers upon them the right to avoid their contracts in order that they may be protected against their own improvidence and the designs and machinations of other people, thus discouraging adults from contracting with them.' [Citation.] To this end, . . . section 6700 provides that 'a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance' set forth in . . . section 6710." (*J.R. v. Electronic Arts Inc.* (2024) 98 Cal.App.5th 1107, 1115 (*J.R.*).) Under section 6710, "[e]xcept as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards or, in case of the minor's death within that period, by the minor's heirs or personal representative." (*Ibid.*)

The question posed in this appeal is whether the trial court correctly ruled that, although Jennifer signed the Waiver Agreement on Madison's behalf, Madison could disaffirm the arbitration provision included in it under section 6710 because she was a minor. Because the material facts underlying this issue are not disputed, we review this issue de novo. (See

7

*Jackpot Harvesting, Inc. v. Applied Underwriters, Inc.* (2019) 33 Cal.App.5th 719, 729; *J.R., supra*, 98 Cal.App.5th at p. 1114.)[8]

The California Supreme Court's opinion in *Doyle v. Giuliucci* (1965) 62 Cal.2d 606 (*Doyle*) is instructive. In *Doyle*, a father entered into a contract for medical services with a medical group that required the medical group to provide the same care and services to his dependents as it did to him; the contract also contained an arbitration provision. (*Id.* at pp. 607–608.) On appeal from a judgment confirming an arbitration award that ruled against the child on her medical malpractice claim, the child argued she had the right to disaffirm the contract under Civil Code former section 35.[9] Our high court concluded that statute "applies to contracts of minors and protects them from their own improvidence in assuming contractual obligations," but "[i]t does not apply to contracts between adults and is therefore not controlling on the question of a parent's power to bind his child to arbitrate by entering into a contract of which the child is a third party beneficiary." (*Doyle*, at p. 609.) After also finding another statute not controlling, the California Supreme Court noted it "appears that no statute expressly determines the outcome of this case," and "[t]he crucial question therefore is whether the power to enter into a contract for medical care that binds the

_____

[8] The parties do not dispute that Jennifer signed the Waiver Agreement. Madison notes the trial court found her filing of this lawsuit was sufficient evidence she disaffirmed any agreement to arbitrate. Sabo Eventing does not dispute whether filing a lawsuit can be sufficient to constitute disaffirmance, but instead disputes that Madison was legally entitled to disaffirm the arbitration provision.

[9] "Family Code section 6710 is nearly identical to Civil Code former section 35." (*Coughenour v. Del Taco, LLC* (2020) 57 Cal.App.5th 740, 747, fn. 1.)

8

child to arbitrate any dispute arising thereunder is implicit in a parent's right and duty to provide for the care of his child [citations]." (*Id.* at p. 610.) The California Supreme Court found "compelling reasons for recognizing that power" and concluded, "[t]he arbitration provision in such contracts is a reasonable restriction, for it does no more than specify a forum for the settlement of disputes." (*Ibid.*)[10]

In the decades following *Doyle*, "courts have held that the right to disaffirm a minor's contract does not extend to a release of liability signed by a parent on behalf of the minor." (*Eriksson v. Nunnink* (2015) 233 Cal.App.4th 708, 721 (*Eriksson*); see also *Aaris v. Las Virgenes Unified School Dist.* (1998) 64 Cal.App.4th 1112, 1120 ["It is well established that a parent may execute a release on behalf of his or her child"].) In *Hohe v. San Diego Unified Sch. Dist.* (1990) 224 Cal.App.3d 1559 (*Hohe*), a minor student was injured during a hypnotism show at school; her father had signed two separate releases, one of which she also signed. (*Id.* at pp. 1562–1563.) The appellate court held the minor could not disaffirm the releases under Civil Code former section 35. (*Hohe*, at p. 1565.) It explained, "[t]he purpose of Civil Code section 35 is to protect the minor from his own improvidence. It is often said, 'he who affirmatively deals with a minor, does so at his peril.' [Citation.] However, the releases signed here were signed on [the minor's] behalf by her parent. A parent may contract on behalf of his or her children.

---

[10] We note Code of Civil Procedure section 1295, subdivision (d) now provides, "[w]here the contract is one for medical services to a minor, it shall not be subject to disaffirmance if signed by the minor's parent or legal guardian."

Civil Code section 35 was not intended to affect contracts entered into by adults on behalf of their children." (*Id.* at pp. 1564–1565.)[11]

We conclude Madison may not disaffirm under section 6710 the arbitration provision her mother signed on her behalf. We find persuasive the cases concluding "the right to disaffirm a minor's contract does not extend to a release of liability signed by a parent on behalf of the minor." (*Eriksson, supra*, 233 Cal.App.4th at p. 721; see also *Hohe, supra*, 224 Cal.App.3d at pp. 1564–1565.) We recognize an arbitration provision is not a release of liability, but "California policy, like federal policy, puts arbitration agreements on equal footing with other types of contracts." (*Quach v. California Commerce Club, Inc.*, (2024) 16 Cal.5th 562, 569.)[12] Given that a minor generally may not disaffirm under section 6710 a release of liability signed by a parent on behalf of the minor, we are not persuaded that an arbitration provision in the same document, which does not extinguish or release claims but merely selects a forum for their determination, may be disaffirmed by the minor under that statute. Here, Jennifer executed the Waiver Agreement, which included the arbitration provision, on behalf of herself and Madison. We therefore conclude Madison may not disaffirm

---

[11] In *City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, the California Supreme Court stated, "although courts in California and a few other states have enforced agreements, signed by parents, releasing liability for future ordinary negligence committed against minor children in recreational and related settings, that position apparently represents a minority view." (*Id.* at pp. 770–771, fns. omitted.) The Court went on to note, however, that "[t]he validity of a release signed by a parent, on behalf of (and binding) his or her child, is not presently before [it]." (*Id.* at p. 771, fn. 32.)

[12] On appeal, neither party has addressed whether the Federal Arbitration Act applies here.

under section 6710 the arbitration provision, and the trial court erred in concluding otherwise.[13]

Madison cites to *Berg*, which the trial court found to be the more analogous case. In that case, a talent manager entered into a contract with a minor actor and the minor's mother, which was signed by the mother. (*Berg, supra*, 148 Cal.App.4th at p. 812.) The minor did not sign the contract; instead, the mother "wrote [the minor's] name on the signature page[,] where he was designated 'Artist.'" (*Ibid.*) Under the contract, which included an arbitration provision, the manager agreed to act as the minor's personal manager in exchange for payments to him of certain commissions from the minor's earnings. (*Id.* at pp. 812–813.) In an action brought by the manager against the minor and his mother, an arbitrator awarded the manager "commissions and interest of $154,714.15, repayment of personal loans and interest of $5,094, and attorney fees and costs of $13,762," and more than $400,000 in projected future earnings. (*Id.* at pp. 813–814.) After the trial court granted the manager's petition to confirm the award and denied the minor and his mother's petition to vacate, the appellate court reversed as to the minor because it held the minor could (and did) disaffirm both the

---

[13] On appeal, Sabo Eventing suggests the trial court found that Madison could disaffirm the *entire* Waiver Agreement. We do not read the court's ruling so expansively. The court specifically ruled only that the arbitration provision was not enforceable against Madison because she effectively disaffirmed it by filing her lawsuit in a judicial forum; it did not rule on the validity of the remainder of the Waiver Agreement. Similarly, the only issue we address on this appeal is the enforceability of the arbitration provision against Madison in the face of her purported disaffirmance of it. We need not, and do not, offer any opinion on whether any other provisions in the Waiver Agreement are enforceable.

contract and arbitration award based on it. (*Id.* at pp. 816–817.)[14] The appellate court distinguished *Hohe* because the contract in *Berg* did not merely require the minor to release another party from liability but instead imposed "significant affirmative responsibilities" on the minor. (*Id.* at p. 819.) The appellate court thus reasoned "the state's public policy to enforce releases signed by parents on behalf of their children is not implicated." (*Ibid.*) The appellate court also distinguished *Doyle* on the grounds that the minor in *Berg* was a principal, not third party beneficiary, of the agreement signed by his mother; the agreement did "not implicate a parent's fundamental duty to provide for the care and health of a child"; there was a "statutory procedure governing contracts in which minors agree to render artistic or creative services"; and the agreement "did not merely require [the minor] to arbitrate his disputes, but created significant obligations on his part, notably, the payment of substantial monies to [the manager]." (*Id.* at p. 819.)

We do not find the personal management services contract in *Berg* to be analogous. We note, for example, that the "significant affirmative responsibilities" imposed on the minor by the contract in *Berg*—which included the payment of significant commissions from the income generated by the minor's acting work—are not present in the Waiver Agreement here. (*Berg, supra*, 148 Cal.App.4th at pp. 813, 819.)

---

[14] The appellate court also held the minor "was entitled to and did disaffirm the arbitration award because he was never represented by an appointed guardian ad litem," which is an issue not presented in this appeal. (*Berg, supra*, 148 Cal.App.4th at p. 821.) The appellate court affirmed as to the mother. (*Id.* at pp. 822–823.)

Madison also points to the trial court's statement that she was not a third party beneficiary to the Waiver Agreement, and asserts that, as a principal to the Waiver Agreement, she is entitled to disaffirm the arbitration provision. Although *Berg* mentions the minor there was a principal, rather than a third party beneficiary, of the agreement, that was only one of multiple facts *Berg* suggested distinguished the case from *Doyle*. (*Berg, supra*, 148 Cal.App.4th at p. 819.) We do not interpret the third party beneficiary references in *Doyle* to mean that the outcome in that case turned on whether the minor was a third party beneficiary or whether the parent signed the agreement on behalf of the minor. (See *Doyle, supra*, 62 Cal.2d at p. 609.) The rationale articulated by *Doyle* applies whether the minor is a principal or a third party beneficiary of the agreement signed by the parent. Moreover, neither *Hohe* nor *Eriksson* even analyzed whether the minor was a third party beneficiary of the release, much less held that would be a determining factor in whether the minor could disaffirm the release of liability. (*Hohe, supra*, 224 Cal.App.3d at pp. 1564–1565; *Eriksson, supra*, 233 Cal.App.4th at pp. 720–721.) We conclude Madison's status as a principal versus a third party beneficiary of the Waiver Agreement is not controlling. Given that the law is clear a minor's right to disaffirm a contract under section 6710 "does not extend to a release of liability signed by a parent on behalf of the minor" (*Eriksson*, at p. 721), we find no reason to conclude that a provision in the same document that simply agrees to an arbitral forum to resolve disputes should be subject to a different rule.[15]

---

[15] Madison also cites *J.R.* and *Coughenour*, but those cases are inapposite as neither involves a parent signing a contract on behalf of the minor. (*J.R., supra*, 98 Cal.App.5th at pp. 1111–1113, 1116; *Coughenour v. Del Taco, LLC, supra*, 57 Cal.App.5th at pp. 744–745.)

13

Finally, Madison argues Sabo Eventing waived its ability to compel arbitration by "engag[ing] in conduct inconsistent with an intent to arbitrate," including, among other things, engaging in prelitigation conversations that mentioned the Waiver Agreement, filing an answer without mentioning arbitration, and "engag[ing] in extensive discovery activities." Sabo Eventing asserts it did not waive its ability to compel arbitration and Madison has mischaracterized and omitted facts. The trial court did not decide this issue, and we decline to address it in the first instance. Instead, we remand to the trial court for it to consider and rule on the issue.

## DISPOSITION

The order denying the motion to compel arbitration is reversed, and the matter is remanded to the trial court for further proceedings and with directions to consider and rule on plaintiff Madison Beverly's waiver argument. Appellant shall recover its costs on appeal.


GOODING, J.

WE CONCUR:


DELANEY, ACTING P. J.


BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14